

| COPYRIGHT CLAIMS BOARD | DOCKET NO. 23-CCB-0120 |
| --- | --- |
| | OPT OUT KEY CODE. LGEX |

# NOTICE
# United States Copyright Claims Board

| Eric O Harms | V. | David Lillie |
| --- | --- | --- |
| **CLAIMANT** | | **RESPONDENT** |

### NOTICE OF OFFICIAL GOVERNMENT LEGAL PROCEEDING – SMALLER CLAIM
**PLEASE READ CAREFULLY**

**TO** (*Respondent's name and address*) ▼

David Lillie
445 Lavender Street
Monroe Michigan 48162

**FROM** (*Claimant's name and mailing address. If claimant is not represented by legal counsel or an authorized representative, the claimant's email address and telephone number should also be included*) ▼

Eric O Harms
1126 James Canyon Drive
Boulder Colorado 80302

This is a notice of an official government legal proceeding that has been filed against you. It may affect your legal rights. Please read it carefully.

Eric O Harms has/have initiated the above legal proceeding before the Copyright Claims Board (CCB) of the U.S. Copyright Office for the following claim(s):

■ an allegation of copyright infringement

❏ a claim seeking a declaration that specific activities of the claimant do not infringe a copyright

❏ an allegation that a misrepresentation was made in notices or counter-notices sent under the Digital Millennium Copyright Act (DMCA).

A copy of the claim is included, and you can also access the claim and other information relating to the proceeding in the docket, which may be found in the CCB's electronic filing and case management system (eCCB) here: **dockets.ccb.gov**. To find the docket in your case, click on "Search cases." Then, in the search box at the top of the webpage, type in the docket number shown at the top of this notice and click on "Search." Click on "View" for a list of all the documents filed in the case.

The CCB has found that the claim complies with the statutory and regulatory requirements for bringing a claim. That finding does not indicate how the CCB will rule on the claim or what monetary damages, if any, the CCB may award the claimant(s) if it rules in favor of the claimant.

*What You Need to Do: The claimant has decided to bring this claim before the Copyright Claims Board instead of federal court. Participation before the Copyright Claims Board is voluntary, meaning that you can opt out and the claimant can then sue you in federal court. If you do not want to participate in the Copyright Claims Board proceeding, you must affirmatively opt out within 60 days of receiving this notice. If you do not affirmatively opt out, the claims will remain with the Copyright Claims Board, you will be given an opportunity to defend yourself against the claims, and you will be bound by the determination of the Copyright Claims Board. If you do opt out, the proceeding will end, but the claimant may then still sue you in federal court.*

**NOTE THAT IF CLAIMANT IS REPRESENTED BY LEGAL COUNSEL OR AN AUTHORIZED REPRESENTATIVE, THE CLAIMANT IS REPRESENTED BY** (*Name, mailing address, email address, and telephone number of claimant's legal counsel or authorized representative*) ▼

Jacob M Baker
10050 Palma Linda Way
Apt 201
Orlando Florida 32836
Phone: 707-327-6984
Email: jmateobaker@me.com

MORE ON BACK

The claim form allows claimants to enter a narrative about the ways in which they believe they have been harmed. Some claimants only request the specific kind of relief that the CCB is authorized to grant but others request forms of relief that the CCB is not authorized to grant. You should know that when claimants are successful on their claim(s), **regardless of what they put in their claim forms**:

1. Monetary awards granted by the CCB for claims of copyright infringement or misrepresentation typically cannot exceed $30,000, but here the claimant has asked the CCB to proceed under a "smaller claims" proceeding, which means that maximum is reduced to $5,000.
    a. If a claimant has asked the CCB to proceed under a "smaller claims" proceeding, that maximum is reduced to $5,000.
2. Either side (claimant or respondent) can be awarded up to $5,000 in costs and/or attorneys' fees if they win, but only if the other side has specifically been found by the CCB to have operated in bad faith during the CCB proceeding.
3. The CCB cannot take into account "willfulness" in awarding any relief, meaning it cannot increase an award against you because it finds your actions willful.
4. Even if the CCB finds for the claimant, the CCB cannot order you to stop or modify infringement or misrepresentation activities. However, if you agree that you will stop or modify those activities if CCB finds you liable, the CCB can make that part of its order. In an infringement claim, if you tell the CCB of such an agreement (**which will not affect whether the CCB finds you liable**) before the CCB issues its final determination, the CCB can, in its discretion, take that agreement into account and reduce the amount of the award against you.
5. There are no monetary awards outside of the above limits before the CCB, meaning there are no monetary awards granted for things like, for example, punitive damages, interest, claims of physical or mental harm, lost wages, or harm to a brand.
6. If the claim is one for infringement, and the claimant is successful, the claimant can get (a) actual damages and the alleged infringer's profits attributable to the infringement, or (b) statutory damages, but not both. Claimants must make their choice (and can change their choice) before the CCB issues a final determination.

**ABOUT THE COPYRIGHT CLAIMS BOARD**
The Copyright Claims Board (CCB) is a three-member tribunal located in the U.S. Copyright Office, which serves as a voluntary alternative to federal court for the resolution of certain copyright disputes that involve damages of no more than $30,000. If you do not wish to have the CCB decide the dispute, you MUST OPT OUT OF THE PROCEEDING, as described further below. More information about CCB proceedings may be found on the CCB website at **ccb.gov**.

**NATURE OF A CCB PROCEEDING**
This proceeding is voluntary, but you must make a choice within 60 days of receiving this notice. You have two options:

(1) **Do nothing.** If you take no action, you will become a party to a proceeding before the CCB and, after the 60 day opt-out period expires, the CCB will issue an order triggering the next steps for the proceeding. Once that happens, your first steps will be to register as a user of the CCB's electronic filing and case management system (eCCB) and to file a response to the claim. You and the claimant(s) will then have the opportunity to share and present evidence relating to the claim, including any defenses you may have. By choosing this course, **you will be bound by the determination of the CCB.**

(2) **Opt out.** You have the right to opt out of participating in the CCB proceeding. If you opt out, following the instructions in this notice, the proceeding will be dismissed and you will not need to appear before the CCB. However, the dismissal will be "without prejudice," which means that the claimant shall have to determine whether to file a lawsuit against you in Federal district court, which may include the same claims as well as claims other than copyright claims.

**REVIEWING THE CLAIM**
Please review the attached claim carefully. The claim form includes important information to help you understand the nature of the Claimant(s) allegations including: the type of claim, the work at issue, and the rights that the Claimant alleges have been infringed.

The claim has been reviewed by the CCB to ensure that it is compliant with the statutory and regulatory requirements for filing. Compliance review does not indicate how the CCB will rule on the claim or that the Claimant stated a viable claim with respect to each of the exclusive rights checked in the claim form or with respect to the damages and other relief requested. It does not indicate whether, in an infringement claim, the responses to the questions regarding whether a respondent is an online service provider are accurate, and you should not assume that a claim that answers "Yes" to those questions means that the claim is only being asserted against you for acts you may have taken as an online service provider or that the claim will be dismissed if you are not an online service provider.

The CCB can grant only certain types of relief. It can award no more than $30,000 in total damages in any one proceeding, no matter how many claims or copyrightable works are at issue. An infringement claimant may be awarded either (1) its actual damages and the alleged infringer's profits earned as a result of the infringement or (2) statutory damages within a set range, but not both. The CCB cannot award monetary amounts unrelated to copyright, such as punitive damages, interest, claims of physical or mental harm, lost wages, or harm to a brand. It may only require a party to pay attorney's fees or costs of the proceeding if that party engages in bad faith conduct during the proceeding. The CCB also cannot issue orders (called "injunctions" in federal court) requiring a party to stop engaging in certain activities or to destroy infringing materials, unless that party has agreed to do so.

**HOW TO OPT OUT OF THIS PROCEEDING**
You have 60 days from receipt of this Notice to opt out. If you are uncertain of the date on which you received this Notice, you may check the docket of the proceeding in eCCB at **dockets.ccb.gov**. The claimant is required to file a "proof of service" that identifies the date you were served no later than seven days after the day you received this Notice, and that proof of service will appear in the docket. This deadline to opt out cannot

be extended except for exceptional circumstances. You may opt out either online or by mail. **Online:** Go to **dockets.ccb.gov** and enter the case number information and code __LGEX__ as directed. **By mail:** complete and sign the opt-out form included with this notice and put it in the mail before your 60 days expires. **It is strongly recommended that, if you do opt out, you do it online where you will receive an immediate email receipt confirming your opt out**.

**YOU MAY REPRESENT YOURSELF OR CONSULT AN ATTORNEY**
CCB proceedings are designed so that individuals may represent themselves; however, you may wish to consult an attorney or a law school clinic or *pro bono* legal services organization before taking action, and you may wish to be represented by an attorney or a law student qualified to practice before the CCB. The CCB has a list of available *pro bono* resources that may be available to provide free or low cost assistance. The list may be found at **ccb.gov/pro-bono-assistance**.

**THERE ARE PROS AND CONS TO APPEARING BEFORE THE CCB**
The CCB is a voluntary alternative to federal copyright litigation. As a result, there are some pros and cons that you may want to weigh in arriving at your decision. The CCB is a simpler, streamlined, and typically far less costly procedure than federal litigation. Before the CCB, monetary damages are capped at no more than $30,000, while in federal court, there is no such limit. However, by participating in a CCB proceeding, **you will not have the ability to have the dispute decided by a federal court (that is, courts created under Article III of the Constitution headed by federal district judges), and you will waive your right to a jury trial**. By participating in a CCB proceeding, you will not have full access to the appellate process regarding the CCB proceeding or determination. If you opt out of this proceeding, you will miss out on the benefits of CCB proceedings, but will preserve access to have the dispute heard in a full federal litigation. For more information, see **ccb.gov/respondent**.

**THE CLAIMANT HAS ELECTED TO PROCEED UNDER THE RULES GOVERNING "SMALLER CLAIMS," WHICH DIFFER IN SOME RESPECTS FROM THE RULES GOVERNING OTHER CCB PROCEEDINGS**
The total monetary relief in a smaller claims proceeding may not exceed $5,000. A single Copyright Claims Officer, rather than the entire Copyright Claims Board, will preside over the proceeding. Discovery (a process in which the parties exchange information) is much more limited and the proceedings are less formal. Following an initial conference at which the presiding Officer will explain the steps of the proceeding and determine whether any discovery is needed, the parties will prepare for a merits conference by submitting written statements describing the facts and their arguments, statements by witnesses, and any evidence they wish to be considered to decide the case. At the merits conference, the parties may present their positions and respond to questions posed by the Copyright Claims Officer. The Officer will then send the parties proposed findings of fact and, after receiving responses from the parties, will issue a final determination. For more information on the differences between smaller claims proceedings and other CCB proceedings, go to **ccb.gov/handbook/Smaller-Claims.pdf**.

**THE CCB IS HERE TO HELP**
The CCB website and the CCB Handbook (available on the CCB website) have resources to help you determine how to respond to this notice, including background information, procedures, and access to *pro bono* resources. If you have a specific question, please send it to **asktheboard@ccb.gov**.

**IF YOUR PROCEEDING GOES FORWARD, HERE'S WHAT HAPPENS NEXT**
In just over 60 days after you were served with the claim, you will receive an order from the CCB requiring that you register as a user of the CCB's electronic filing and case management system. You will register for eCCB by going to the following website: **dockets.ccb.gov**. From that webpage, you will click on "or register for an account…" and follow the prompts to set up an account through login.gov. You will then follow the instructions to link your eCCB account to this proceeding, after which you will receive a schedule for the proceeding, providing the opportunity for you to respond to the claim and raise defenses, as well as file any allowable counterclaims if you wish. You will be able to receive from and give to the other side documents as well as answers to questions relevant to the claims and any counterclaims, and then present your evidence to the CCB. Should you wish to consult an attorney, you may do so. You may also access a list of *pro bono* resources the CCB lists on its **website**. The CCB also offers the opportunity for settlement conferences. At the end of this process, the CCB will issue a determination that will bind both you and the claimant(s), with only limited opportunity for further review or appeal.

**COPYRIGHT CLAIMS BOARD**

**Docket number:** 23-CCB-0120

# United States Copyright Claims Board

| Eric O Harms | v. | David Lillie |
|---|---|---|
| CLAIMANT | | RESPONDENT |

## CLAIM

| | |
|---|---|
| **Type** | A claim for infringement |
| **Would you like to proceed as a "smaller claims" proceeding (including the $5,000 monetary limit) instead of the standard CCB small claims proceeding?** | Yes |

**Claimant**

**Name**
Eric O Harms

**City**
Boulder, CO

### Authorized representative information

**Name**
Jacob M Baker

**Law firm, clinic, or pro bono legal services organization name**
Solo

**Email**
jmateobaker@me.com

**Phone**
707-327-6984

**Address**
10050 Palma Linda Way
Apt 201
Orlando, FL 32836

**Respondent**

**Name**
David Lillie

**Infringement claim: Works infringed**

**Title of work**
Xyk

**Author(s)**
Eric Harms

**Has the work been registered by the Copyright Office?**
Yes

**Registration number**
VAu001493040

**Effective date**
03/19/2023

**Type of work**
Pictorial Graphic and Sculptural (such as two-dimensional and three-dimensional works of art, graphic art, and photographs)

**Describe the work**
A fictional character represented as a coyote with a black leather collar with a silver buckle named Xyk or QuickXyk.

| | |
|---|---|
| **Infringement claim: Wrongful activities** | |
| **Wrongful activities** | Create a derivative work |
| **Is the infringement ongoing?** | Yes |
| **Infringement dates** | 03-08-2023 - Present |
| **Where the alleged infringing acts occurred, such as a physical place or online. If unknown, type unknown.** | https://dreamkeeperscomic.com/store/p/QuickXyk-Ring-of-Vengeance-PDF https://www.patreon.com/Dreamkeepers https://twitter.com/Dreamkeepers https://www.facebook.com/Dreamkeeperscomic https://www.instagram.com/vividpublishing/ https://www.youtube.com/watch?v=lAyaQoC2uZU https://www.minds.com/Dreamkeepers/ https://www.subscribestar.com/dreamkeepers https://www.furaffinity.net/user/dreamkeepers |
| **Describe the infringement** | The Claimant provided oral and visual descriptions of his original character QuickXyk to the Respondent for years while commissioning artwork. The Respondent later asked the Claimant about producing an illustrated novella based on the Claimant's character. A contract was signed between the parties recognizing the Claimant's ownership of QuickXyk and the Respondent's interest in making a work derived from the Claimant's IP. Later, the Claimant exercised the dissolution clause of the contract. Without communicating with the Claimant, the Respondent then published the novella entitled "QuickXyk: Ring of Vengeance" online for free against the Claimant's wishes. |
| **Are any of the respondents online service providers?** | No |
| **Description of harm suffered and relief sought** | Harm suffered was loss of promised percentage of gross sales from the novella and loss of control over copyrighted material, ideas, and promotion. Claimant is seeking an order against the respondent to stop all infringing activities, including distribution of the novella in its current form; a declaration of ownership of the copyright by the Claimant; payment of promised funds and attorney fees. |

COPYRIGHT CLAIMS BOARD

| | |
|---|---|
| ERIC O. HARMS,<br>    Claimant,<br><br>v.<br><br>DAVID LILLIE,<br>    Respondent. | Docket No.: 23-CCB-0120<br><br>AMENDED COMPLAINT |

This Amended Complaint is being submitted to resolve all issues under 27 C.F.R. § 224.1(c)(2) with the original complaint in the above captioned case.

BACKGROUND

In 2007, ERIC O. HARMS ("Claimant") created the character of QuickXyk, an anthropomorphic coyote wearing a black leather collar with a silver buckle, as a personal identity for his participation in the "furry fandom," a world-wide community of anthropomorphic animal enthusiasts. During his participation in this community, the Claimant regularly commissioned artists to create artwork of QuickXyk. Early in this involvement, a friend recommended the Claimant produce his own sketch of his character. The Claimant took the advice and drew a sketch of QuickXyk by his own hand.

After a year of involvement in the furry fandom commissioning multiple pieces of art of QuickXyk, the Claimant contacted DAVID LILLIE ("Respondent"). The Respondent is an artist involved in the production of graphic novels and at the time accepted art commissions in the same manner as Claimant made with other artists. In the years following, Claimant commissioned Respondent multiple times, providing him with visual references for QuickXyk,

oral and verbal descriptions of QuickXyk, and suggestions for in-character scenarios for QuickXyk, and this eventually yielded a small catalog of art pieces.

On September 28, 2013, Respondent suggested to Claimant they collaborate on a new, original illustrated novella ("the Work") built around the art pieces the Claimant had commissioned from the Respondent. Claimant signed a contract with Respondent on March 8, 2020. The contract explicitly recognizes that Claimant "retains ownership of their character [QuickXyk]" and Respondent "does not have ownership over the character, but is granted full license from the [Claimant] to print, promote, market, feature, and publish the Work featuring this character, in perpetuity." Under the contract's terms, the Claimant would receive a percentage of the net profits from the sale of the Work after its completion. Further, the contract includes terms of dissolution giving either party the right to "dissolve their involvement at-will, with no reason required." The contract provided no retainer payment or any other benefits until the Work was completed and had produced a net profit.

For two months following the signing of the contract, the Claimant and Respondent continued to collaborate on the illustrated novella. After May of 2020, the Respondent stopped communicating with the Claimant. On November 16, 2020, the Respondent publicly announced a health challenge, and the Claimant sent a message of sympathy a few days later. The Respondent answered the Claimant and continued to communicate for a month until the Respondent's final communication on December 30, 2020.

Following nearly two years of silence, the Claimant believed that the project had been abandoned, so he was surprised when in December of 2022, the Respondent's spouse contacted the Claimant with information that the Work was expected to be published in 2023 or 2024 with financial help from "a small Indiegogo campaign." The Claimant was doubly surprised on

February 24, 2023, when the Respondent's spouse informed the Claimant that the Respondent was "getting ready to promote and launch your coyote book." After nearly two years of silence, a wildly shifting schedule, and much retrospection, the Claimant was no longer interested in having his character appear in the Work. Early on February 28, 2023, the Claimant gave written notice to the Respondent of his interest in dissolution. Later that same day, the Respondent's company released a newsletter stating that "[a]n illustrated novel in a wild new fantasy setting by [the Respondent would be] dropping this spring[sic], featuring Eric Harm's[sic] character 'QuickXyk'."

On March 1, 2023, the Claimant received an email from a party identifying as "-h" using letterhead from the Respondent's publishing company and identifying as a representative for the Respondent. The email acknowledged the Claimant's request for dissolution, rejected it, and announced that the Work would be given away for free "as a favor to you for your long-time support." This removed the only benefit that had been promised to the Claimant in exchange for the license to QuickXyk.

The Claimant sought legal counsel the next day and sent a letter to the Respondent on March 5, 2023, requesting a list of changes be made to the Work under which QuickXyk would be removed but the Work's salability would be preserved. Later that day, "-h" answered again claiming that the Respondent would not honor any of the changes save for the removal of the Claimant's credit, thus stripping the Claimant's name from his own work while simultaneously seizing his contribution. "-h" further told the Claimant that the Respondent would not discuss the matter further.

On the morning of March 8, 2023, the Claimant asked for confirmation that "-h" had actual authority to back up the apparent authority provided by the emails. The Claimant further

told "-h" that he had retained counsel to review the contract. Later that same morning, the Work was published online for free on the Respondent's website.

The Claimant has since aggressively pursued DMCA takedown notices to websites publishing the Work. The Claimant then filed this claim with the CCB. Despite the DMCA notices and the filed CCB claim, the Respondent has continued to publish material from the Work online, necessitating more DMCA takedown notices. As of the time of this Amended Complaint, the Claimant has had no communications with the Respondent since December 2020, and the Claimant has never received any benefit for the Respondent's use of QuickXyk.

## VALID COPYRIGHT

To fulfill the prerequisite copyright filing in anticipation of legal action, the Claimant filed for a copyright using the sketch of QuickXyk he had created by his own hand prior to his involvement with the Respondent. The copyright was registered on March 19, 2023, under registration number VAu001493040.

## EXCLUSIVE RIGHTS

The Claimant is the sole creator of the QuickXyk character. While the Claimant has commissioned artists to create artwork of his character, all commissions were made under the Claimant's instructions as the sole creator and owner of the QuickXyk character. In preparation for this litigation, the Claimant now holds a registered copyright of the QuickXyk character that he made by his own hand. Further, the contract signed between the Claimant and the Respondent proves recognition by the Respondent that the QuickXyk character is the sole creation and property of the Claimant.

## ACCESS

By the time the Work was first suggested by the Respondent, the Respondent had received extensive access to the QuickXyk character through a series of artwork commissions. In particular, the Claimant provided the Respondent access to commissioned art pieces produced by other artists under the Claimant's instructions along with providing additional oral and written descriptions. The Claimant and Respondent have worked closely for many years producing artwork of QuickXyk with the Claimant providing visual, oral, and verbal direction both as part of and outside the Work.

## SUBSTANTIALLY SIMILAR

The character in the Work is intended to be the Claimant's character of QuickXyk. The Respondent explicitly conceived the Work as featuring the Claimant's character of QuickXyk. The contract provides evidence of the Respondent's understanding that the Claimant created QuickXyk, owns QuickXyk, and that the Work is intended to feature QuickXyk.

Vivid Publication Contract 2.0

**I-   Definitions: Publisher, Coauthor, Work.**
**II-   Liability**
**III-   Ownership**
**IV- Publisher rights**
**V- Sales and revenue**
**VI- Statements and disbursements**
**VII- Dissolution**
**VIII- Signatures**

## I-   Definitions: Publisher, coauthor, Work.

This contract defines an agreement between Vivid, Independent Publishing LLC (hereafter referred to as the Publisher) and __Eric Harms_  (hereafter referred to as the cocoauthor)

It is regarding publication and promotion rights related to ___QuickXyk Ring of Vengeance_____- the story, pages, characters, images, subsidiary and   related material hereafter referred to as the Work.

## II-   Liability

The coauthor assumes legal responsibility for the content and repercussions of the Work.   The Publisher will not be held liable for any legal actions related to the Work.

The Publisher makes no guarantees or promises of action or results relating to the Work.   The Publisher intends to print, promote, and sell the work, but financial shortfalls, time limitations, and other considerations may prevent the Publisher from acting on these intentions.   The coauthor may not take legal action against the Publisher for a lack of action, unwanted results, or misfortunes.

## III-   Ownership

The coauthor truthfully represents to the Publisher that they are the sole, rightful and exclusive owner of The Work's feature character 'QuickXyk,' aka 'Xyk', and that Xyk does not infringe on the copyrights or intellectual property of any 3rd parties.   Other characters appearing in The Work are joint creations between The Publisher and The Coauthor, and as such both parties share ownership.

The coauthor has allowed the use of their character in the formation of The Work, the specific chapters and passages comprising the novella and illustrations for Ring of Vengeance, and the coauthor shares ownership of The Work with the author and illustrator David Lillie.

Pursuant to this agreement, the coauthor retains ownership of their character. The Publisher does not have ownership over the character, but is granted full license from the coauthor to print, promote, market, feature, and publish the Work featuring this character, in perpetuity.

## IV-   Publisher rights

The coauthor grants the Publisher license to print, distribute, and promote the Work.   This includes the Publisher entering into contractual agreements with 3rd parties who provide services related to printing, marketing, distribution, retail, delivery, et cetera.

The coauthor grants the Publisher the right to use the Work and any related images for promotional and other purposes, as well as biographical information, as provided by the coauthor, for the purposes of publicity.

## V-   Sales and Revenue

Revenue originating from the Work may be in the following categories:

**Book sales.**
**Electronic sales.**
**Merchandise sales.**
**Licensing of significant rights.**
**Marketing costs.**

Revenue not covered by these categories will be covered by an addendum to this contract, as agreed to by the coauthor and the Publisher.

### Book Sales

Physical books will be printed through the Publisher.   When available, the coauthor may purchase copies of the book from the Publisher at the printing cost, also paying for the cost of mailing /delivering the books.

Physical books may also be independently printed by the coauthor, with notice provided to the Publisher.

Revenue disbursements from book sales will be contingent upon who sells them.   The coauthor is not required to sell books themselves, but it is an option.

**Books sold by the coauthor:**   The coauthor may keep 50% of the proceeds from books they sell and deliver themselves.   The Publisher requests biannual statements on coauthor sales, to gauge the effectiveness of marketing efforts and readership growth.

**Books sold by the publisher:**   The coauthor will receive 25% of the net profit of books sold by the Publisher.

Net Profit = (Gross sale price - printing cost - shipping and mailing costs)

Sales made both directly to customers and through distribution outlets will use the above disbursement formula- but the Publisher advises the coauthor that retailers provide a much lower gross sale price, and lower resulting profit.

### Electronic Sales

Electronic sales, including e-books and downloads across all devices, will have 25% of the Net profit distributed to the coauthor.
Net profit = (Gross sale - marketplace costs / provider costs - paypal or other financier fees.)

### Merchandise Sales

Merchandise may be created by the coauthor, by the coauthor licensing 3rd-party creators or contractors

such as Cafe-press, by the Publisher with the coauthor's consent, and by the Publisher licensing 3rd-party creators or contractors with the coauthor's consent.   Due to the potential variety of merchandise, details will vary on a case-by-case basis as reasonable.

**Merchandise sold by the coauthor:**   The coauthor may keep 75% of the proceeds from merchandise they generate, sell, and deliver themselves.   The Publisher requests biannual statements on coauthor sales, to gauge the effectiveness of marketing efforts and readership growth.

**Merchandise sold by the publisher:**   The coauthor will receive 25% of the net profit of merchandise sold by the Publisher.

>   Net Profit = (Profit - Marketing cost)
>   Profit = (Gross sale price - production cost - shipping and mailing costs)

**Art Prints:**   Either party may commission, produce, and sell art prints, online and at conventions, and the seller may retain any proceeds.

### Licensing of Significant Rights

Licensing of significant rights refers to proliferation of the Work into new mediums and alternate forms, such as film, television, games, retail-chain level merchandising agreements, or agreements with media corporations and other entities.

Licensing of Significant Rights is considered to be a result of the coauthor and Publisher both successfully promoting the Work to the level that it receives attention and opportunities it was not afforded prior to publication.

Licensing arrangements will be covered by new contracts (or addendums) on a case-by-case basis, and that licensing initiatives will not proceed otherwise.

### Marketing Costs

The Publisher and the coauthor are free to make independent expenditures to advertise the Work.   Joint expenditures will be handled on a case-by-case basis, subject to written agreement on the venue and projected cost sharing.

## VI-   Statements and Disbursements

The Publisher will provide the coauthor with a semiannual statement.   The statement will list sales and revenue from and relating to the Work, as well as marketing costs.   The Publisher will disburse payment to the coauthor within 30 days of coauthor receipt of the statement.   Payment can be made through paypal or by check.

The Publisher requests a biannual statement from the coauthor listing any coauthor sales activity relating to the Work, for the purposes of monitoring readership growth and marketing effects.

## VII-   Dissolution

This contract is entered into at-will by both the Publisher and the coauthor.   Either party may dissolve their involvement at-will, with no reason required, pursuant to the below conditions.   Subsequent to any dissolution, the coauthor is understood to retain full ownership of their character QuickXyk, and The Publisher is understood to retain full licensing rights to continue publishing The Work.

**Notice**
**Arbitration**
**Inventory**

**Notice-**   If either party intends to conclude their working relationship with one another, they will first provide written notice 60 days in advance to the dissolution becoming effectual.

**Arbitration**- If a disagreement arises between the Publisher and the coauthor, they agree to first consult with one another, in person or over the phone, to resolve differences reasonably and amicably.

   If the Publisher and coauthor cannot resolve their differences, they will submit to impartial 3rd-party arbitration on the matter.

**Inventory**-    Any existing inventory created at the coauthor's expense is considered their physical property, and any inventory created at The Publisher's expense is considered their physical property.   After dissolution, the coauthor retains the right to sell existing Vivid imprinted inventory of the Work, and claim 100% of the resulting revenue.   After dissolution, The Publisher retains the right to produce and sell inventory of The Work and claim 100% of the resulting revenue.

**Subsequent Printing-**
After dissolution is effective, both parties may manufacture new editions of The Work, provided they duly credit appropriate writing partners internally for their creative contributions.   Production and sale of new editions of The Work may be undertaken independently by either party subsequent to dissolution.   The Vivid Publishing logo may not be utilized by the coauthor if a dissolution has been effected.

# VIII-   Signatures

By signing below, I attest that I have read, understood, and agreed to all of the above conditions.   I agree to abide by them, and work in good faith with the other party on all matters.

Coauthor__*[signature]*_____Date_____03.08.2020_____

Publisher_____David Lillie_____Date_____

```
Type of Work:      Visual Material

Registration Number / Date:
                   VAu001493040 / 2023-03-19

Application Title: Xyk.

Title:             Xyk.

Description:       Electronic file (eService)

Copyright Claimant:
                   Eric Harms, 1975-   .

Date of Creation:  2007

Authorship on Application:
                   Eric Harms, 1975-  ;  Citizenship: United States.
                      Authorship: 2-D artwork.

Alternative Title on Application:
                   QuickXyk

Rights and Permissions:
                   Eric Harms, 1126 James Canyon Dr., Boulder, CO, 80302,
                      United States, (949) 933-2140, ericoharms@gmail.com

Copyright Note:    C.O. correspondence.
                   Regarding basis for registration: Registration based on the
                      artwork in the 2-D artwork. Copyright does not protect
                      names, titles, short phrases or slogans. 37 CFR 202.1.
                   Regarding basis for registration: Registration based on
                      deposited pictorial authorship describing, depicting, or
                      embodying character(s). Compendium 313.4(H).

Names:             Harms, Eric, 1975-

================================================================================
```



**DOCKET NO.** 23-CCB-0120

# United States Copyright Claims Board

| Eric O Harms | V. | David Lillie |
|---|---|---|
| **CLAIMANT** | | **RESPONDENT** |

### FORM TO OPT OUT OF COPYRIGHT CLAIMS BOARD PROCEEDING

**ENTER OPT OUT KEY CODE HERE:** _____

**RESPONDENT'S ADDRESS ▼**

[ ]

---

**Note: If you wish to opt out of this proceeding, you must do so online or return this form** no later than 60 days from the date you received the Notice of Service. You may complete this form online at **dockets.ccb.gov** by entering the requested information and your designated key code (provided in the Initial Notice) or by completing this paper form and returning it to Copyright Claims Board, Library of Congress, 101 Independence Avenue SE, Washington, DC, 20559-6001. **It is strongly recommended that, if you do opt out, you do it online where you will receive an immediate email receipt confirming your opt out**.

I, _____, have received notice of the claim  23-CCB-0120  initiated with the Copyright Claims Board and I am **opting out of this proceeding before the CCB**. I affirm that I shall not appear before the Copyright Claims Board with respect to this claim. I understand that opting out means that this claim will go no further with the Copyright Claims Board, but that the claimant may instead choose to file a lawsuit in federal court.

**CHECK ONE:**

❏ I certify under penalty of perjury that I am a respondent named in the claim identified above and that the foregoing is true and correct.

❏ I certify under penalty of perjury that I am the legal counsel or authorized representative of a respondent named in the claim identified above and that I have been directed and authorized by the respondent to opt of this proceeding.

---

❏ I certify under penalty of perjury that the foregoing is true and correct.

**Signature** (X) ▼

X _____

**Printed or typed name:** _____