<u>IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO</u>

Case No.: <u>1:23-cv-02616-SKC</u>

ERIC O. HARMS,

    Plaintiff,

v.

VEGASNAP, LLC d/b/a FIBERHUB,
et al.

    Defendants.

---

**DEFENDANT VEGASNAP, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR LACK OF PERSONAL JURISDICTION**

---

COME NOW, Defendant VegasNAP LLC d/b/a Fiberhub ("VegasNAP"), by and through its counsel, respectfully moves this Honorable Court for dismissal of all claims herein pursuant to Fed. R. Civ. P. 12(b)(6), on the basis that the plaintiff's complaint fails to state a claim upon which relief can be granted and under Fed. R. Civ. P. 12(b)(2) for a lack of personal jurisdiction.

## INTRODUCTION

On October 10, 2023, Plaintiff filed his Complaint ("Complaint") against the defendants in the U.S. District Court for the District of Colorado. Compl. Dkt. 2. VegasNAP is a Nevada limited liability company. Compl. Dkt. 2 ¶ 4. Plaintiff eventually served VegasNAP on March 4, 2024. Dkt., 13.

To begin, Plaintiff's fifth claim is the only claim directed toward VegasNAP and is vague about violating "intellectual property rights" while also being unclear about the actual federal

statute being violated by VegasNAP. Compl. ¶ 58. As a result, for the purposes of this motion, VegasNAP will reply as if Plaintiff's fifth claim relates to copyright infringement. Second, while Plaintiff alleges jurisdictional claims against the other defendants, Plaintiff's Complaint fails to make any allegations about personal jurisdiction regarding VegasNAP.

The substance of Plaintiff's allegations against VegasNAP boil down to the applicability of a Digital Millennium Copyright Act ("DMCA") takedown request sent to them. Compl. ¶¶ 38-40. Plaintiff's Complaint should be dismissed as a matter of law because the Complaint fails to allege any volitional acts by VegasNAP that proximately caused the copying of the specific work identified by Plaintiff, although separately unclear which work, is at issue in the case as well as a for a lack of personal jurisdiction given the Complaint makes no allegations whatsoever about personal jurisdiction and VegasNAP.

## ARGUMENT

### I.   Fed. R. Civ. P. 12(b)(6) Provides for Dismissal of a Complaint for Failure to State a Claim Upon which Relief Can Be Granted.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (citation omitted). "A plaintiff must 'nudge [his] claims across the line from conceivable to

plausible' in order to survive a motion to dismiss." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).

Courts must "'assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff.'... '[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.'" *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Under Rule 12(b)(6), it is "facts, not conclusions, that must be pled; 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including 'legal conclusion[s] couched as a factual allegation.'" *Jacobs v. Credit Suisse First Bos.*, No. 11-CV-00042-CMA- KLM, 2011 WL 4537007, at *1 (D. Colo. Sept. 30, 2011) (quoting *Iqbal* 556 U.S. at 678).

Therefore, a complaint can be dismissed under Rule 12(b)(6) if: (1) it does not allege sufficient facts to state a plausible claim; or (2) the facts that it does allege do not implicate any cognizable legal theory.

Although Plaintiff's Complaint is ample, most of the specific factual allegations are directed towards third-party entities unrelated to VegasNAP and Plaintiff has to resort to conclusory assertions devoid of any specific fact that could plausibly support those claims. For the reasons set forth below, Plaintiff's Complaint should be dismissed.

**B.    Plaintiff Fails to State a Claim for Direct Copyright Infringement**

To state a claim for direct copyright infringement, a plaintiff must allege (1) ownership of a valid copyright, and (2) copying by the defendant of protected components of the copyrighted

material. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 831 (10th Cir. 1993). To establish the first prong of this standard, a plaintiff may satisfy the elements of originality and authorship by producing a certificate of copyright registration, which is *prima facie* evidence of copyright validity. 17 U.S.C. § 410(c). Plaintiffs must also allege facts sufficient to show standing to assert a copyright claim. 17 U.S.C. § 501(b) provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled...to institute an action for any infringement..." To establish the second prong of this standard, Plaintiff must prove that the alleged direct infringement was proximately caused by VegasNAP's volitional act. "The Second, Fourth, Fifth, and Ninth Circuits have held that to succeed on a direct copyright infringement claim, the plaintiff must show "volitional conduct" by the defendant. See, e.g., *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550-51 (4th Cir. 2004); *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 443-44 (5th Cir. 2017); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017)." *Millennium Funding, Inc. v. Private Internet Access, Inc.*, Civil Action 21-cv-01261-NYW-SKC, 26 (D. Colo. Oct. 13, 2022). Indeed, in *Millennium*, this Court also came to the same conclusion, and "predicts that the Tenth Circuit would follow the other Circuit courts holding that causation is a requisite element of a copyright infringement claim".."[p]laintiffs must adequately plead 'volition conduct'…". *Id at* 27.

This volitional act requirement is especially pertinent where claims arise from a defendant's infrastructure or system that can be utilized by others, for allegedly infringing activities. Therefore, "there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party." 3 Patry on

Copyright § 9:5.50 (2021) (quoting *Religious Tech. Ct.r v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995)). Regarding internet transmission via a defendant service provider, a user interacts with a defendant's service by entering one or more commands into an online user interface, allowing control over the operation of a defendant's content-neutral service to automate or allow one or more operations. Importantly, the defendant service provider would not incur direct infringement liability because the user would be the proximate cause of infringement. "'[D]irect liability must be premised on conduct that can reasonably be described as the direct cause of the infringement.'" *VHT*, 918 F.3d at 731.

In such cases where a defendant service-provider, such as VegasNAP, owns infrastructure that can be used for direct copyright infringement, liability is upon, "the person who actually presses the button to make the recording, supplies the necessary element of volition, not the person who manufactures, maintains, or, if distinct from the operator, owns the machine." *See Cartoon Network*, 536 F.3d at 131.

When a defendant service-provider such as VegasNAP offers a service that is limited to processing content at the direction of its users, the volitional conduct by the service-provider must be demonstrated for a proper finding of direct liability. *See Cartoon Network,* 536 F.3d at 131-132 (stating that "volitional conduct is an important element of direct liability" holding that "we are not inclined to say that Cablevision, rather than the user, 'does' the copying produced by the RS–DVR system."); *VHT*, 918 F.3d at 731 (plaintiff failed to provide evidence that Zillow selected material for upload, download, transmission, or storage, or instigated copying, storage, or distribution; Zillow acted passively, at the request of its users).

1. **Plaintiff has not Plausibly Pled Ownership of the Works Purportedly Infringed.**

In its Complaint, Plaintiff alleges that he created a "character" named "QuickXyk" in 2007. Compl. ¶ 14. Plaintiff goes on to allege that the character "QuickXyk" can be described as an anthropomorphic coyote wearing a black leather collar with a silver buckle. *Id*. Plaintiff further alleges in its Complaint that he waited fifteen (15) years before he registered a "sketch" of the same anthropomorphic character on March 19, 2023, registration number VAu001493040. *Id.* at ¶ 37. ("The Registration"). The Registration if consistent with standard visual arts (VA) registrations includes authorship claims of 2-D artwork, and like any other VA registration generally "does not protect names, titles, short phrases or slogans."[1] To be clear, the Registration only granted rights to the 2-D artwork and clearly not an entire illustrated novella.

However, Plaintiff has not asserted facts sufficient to sustain a copyright infringement claim because the Complaint fails to establish sufficient facts regarding ownership of the purportedly infringed work Plaintiff claims is at issue. Compl. ¶ 19. Instead, Plaintiff intentionally conflates the name of the Registration with the actual illustrated novella seemingly central to this matter. Compl. ¶¶ 19, 30. Plaintiff admits filing the Registration in contemplation of this lawsuit, at least a decade after commissioning artwork from defendant Lillie, Plaintiff's co-author. Compl. ¶¶ 18, 37. However, despite vociferously claiming rights in the novella, Plaintiff has failed to produce the deposited pictorial authorship made with the Copyright office as part of the pleadings. Instead, Plaintiff relies only on the innuendo of the matching name of a character in an attempt to convince this Court of his broad ownership rights. Additionally, Plaintiff never alleges whether his registered sketch may in fact be derivative or contains

---

[1] Pursuant to FRE 201(b) the Court may take judicial notice of the standard form and disclaimers involved with a visual arts copyright registration form (Form VA) available at the U.S. Copyright Office website without considering it as new evidence in violation of Fed. R. Civ. P. 12(d) (https://www.copyright.gov/forms/formva.pdf) (last visited April 16, 2024).

reproductions or illustrations of any other work. Combined with the rushed registration in contemplation of this lawsuit, and the notable lack of pictorial authorship, it is impossible to ascertain precisely what rights, if any, Plaintiff may have in the allegedly infringed work.

Thus, based solely on the allegations in Plaintiff's Complaint, and his overly-broad claim to a general character, it is not possible for the Court to determine what elements Plaintiff has ownership rights in, and to compare what has actually been infringed as a matter of law, and to determine ownership under § 501(b). For that reason alone the Court should grant VegasNAP's motion to dismiss Plaintiff's fifth claim.

### 2. Plaintiff Has Not Plausibly Pled Any Volitional Act by VegasNAP

Plaintiff's scant remarks regarding VegasNAP's involvement are not sufficient to plausibly demonstrate that VegasNAP performed any volitional acts. Plaintiff merely alleges that VegasNAP provided the requisite infrastructure for "hosting" a website where a third-party performed the alleged volitional act of "publishing." Compl. ¶ 36. Plaintiff's sole claim against VegasNAP rests – wrongly – on VegasNAP's alleged *inaction*, the subjective failure to adequately respond to a notice of claimed infringement. Compl. ¶ 47. Plaintiff additionally alleges the sending of DMCA requests and the speculative claim about the automated response from VegasNAP's systems. Compl. ¶¶ 39-40, 44-45. This speculative allegation is the very kind of conclusory legal assertion that is not afforded a presumption of truth on a motion to dismiss.

In fact, Plaintiff's erroneous claim that VegasNAP is liable because it allegedly 'hosted' the content of a third-party demonstrates a fundamental misunderstanding of copyright infringement as well as the actual nature of the relationship between the defendants. Plaintiff seems to suggest that direct-infringement liability also flows to a service provider such as

Defendant. Plaintiff's logic would mean that the U.S. Postal Service could be held liable for third-parties distributing infringing copyrighted works through the mail or that a bookstore could be held liable for copyright infringement because someone placed an unauthorized infringing copy of a book on a bookshelf in the bookstore. Because U.S. copyright law does not transfer direct infringement liability to third-party service providers, whether they be a parcel delivery service, an upstream internet service provider such as VegasNAP, or a website hosting company, Plaintiff has also failed to allege any facts demonstrating any requisite volitional conduct necessary to prove VegasNAP engaged in copyright infringement.

Plaintiff's factual pleading in the Complaint regarding the DMCA request sent to VegasNAP is irrelevant to any finding of direct infringement, and does not include any voluntary acts. Plaintiff does not allege that the DMCA response was a voluntary act, instead Plaintiff admits that any response received from VegasNAP was automated. Even if the facts alleged in the Complaint are accepted on their face, there are no allegations of VegasNAP's conduct other than its automated reply after receiving the DMCA request.

Because Plaintiff's Complaint has failed to plead any facts that demonstrate that VegasNAP undertook any volitional acts that could violate Plaintiff's intellectual property rights, the Court should grant VegasNAP's motion and dismiss Plaintiff's claim as a matter of law.

    **II.    Plaintiff's Complaint should be Dismissed for a Complaint for a Lack of Personal Jurisdiction.**

    **A. Fed. R. Civ. P. 12(b)(2) Provides for Dismissal of a Complaint for a Lack of Personal Jurisdiction.**

Plaintiff has failed to establish that VegasNAP has a systematic and continuous relationship with Colorado, or that it has employees located in Colorado, has ever recruited

employees in Colorado, has ever been registered to do business in Colorado, ever owned or operated any offices in Colorado, maintained any bank accounts in Colorado, advertises directly to Colorado residents, or had any telephone listings in Colorado.

**B. Plaintiff's Complaint Never Established that VegasNAP Engaged in Intentional Conduct Aimed at Colorado.**

**1.** *Plaintiff's Allegations Relate Almost Exclusively to Third-Party Conduct.*

Plaintiff's Complaint generally alleges that a third-party infringed its copyrighted work (*e.g.* Compl. ¶¶ 50-51) and that VegasNAP somehow was involved in the hosting of the work. *See* Compl. ¶¶ 58-59.

**2.** *Plaintiffs Have Not Pled and Cannot Plead Intentional Conduct by VegasNAP.*

Plaintiff's Complaint does not include claims of intentional conduct by VegasNAP directed to Colorado, and instead focuses on Plaintiff's actions or third-party conduct. Plaintiff claims that they sent VegasNAP a DMCA takedown notice, which was not received in Colorado. Compl. ¶¶ 38-40. Any alleged acts by VegasNAP relating to Plaintiff's claim would have taken place in Nevada, and evidence of such matters would be located in and accessible from Nevada.

**C. Legal Standard for Personal Jurisdiction.**

**1.** *Plaintiff Bears the Burden of Proof.*

The plaintiff has the burden of establishing personal jurisdiction. *XMission, L.C. v. Fluent LLC,* 955 F.3d 833, 839 (10th Cir. 2020). If the court determines jurisdiction on affidavits and other written material and does not conduct an evidentiary hearing, the plaintiff must make a *prima facie* showing that jurisdiction exists. *Id*. When evaluating personal jurisdiction under the due process clause, the Court only "accept[s] as true the well-pleaded ('that is, plausible, non-

conclusory, and non-speculative') facts alleged in the complaint" that are not "controverted by sworn statements." *Id*. at 836 (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Shrader v. Biddinger,* 633 F.3d 1235, 1248 (10th Cir. 2011)).

### 2. *Due Process Inquiry.*

Because the Copyright Act does not provide for nationwide service of process, this Court's due process analysis turns on whether jurisdiction comports with constitutional due process demands. *Dudnikov*, 514 F.3d at 1070. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed.2d 12 (2014). For a court "to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). That is, the contacts with the forum State must be such that the defendant "should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction. *See Shrader*, 633 F.3d at 1239. A person is subject to general jurisdiction within a State only if its contacts with the State are so "continuous and systematic" that the person is essentially at home in the State. *Old Republic Ins. Co. v. Cont'l Motors, Inc*., 877 F.3d 895, 904 (10th Cir. 2017).

On the other hand, specific jurisdiction allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State. *Id*.

Specific jurisdiction is proper if: (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum State, and (2) the plaintiff's alleged injuries "arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 2182, 85 L. Ed. 2d 528 (1985) (internal quotation marks omitted). The "arising-out-of" component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum. *Bristol- Myers Squibb Co. v. Superior Ct. of Cal.,* S.F. Cty., 137 S. Ct. 1773, 1781, 198 L. Ed. 2d 395 (2017). Even if the plaintiff satisfies these requirements, a defendant can defeat jurisdiction by making a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S. Ct. at 2185.

**D. Plaintiff's Complaint Should be Dismissed for a Lack of Personal Jurisdiction.**

**1.** ***Dismissal is Necessary Because VegasNAP is Not Subject to General Jurisdiction in Colorado.***

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846, 2853–54, 180 L. Ed. 2d 796 (2011)). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Daimler*, 571 U.S. at 137. In *Daimler*, the Court rejected the plaintiff's theory that the activities of a company's subsidiary alleged to be the company's agent

were sufficient to confer general jurisdiction, also noting that even when a company "operates in many places," the company "can scarcely be deemed at home in all of them." *Id.* at n.12.

Even before *Daimler*, courts were clear that the bar for general jurisdiction is quite high. "'[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders.'" *Shrader*, 633 F.3d at 1243 (*quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000)). "Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there." *Shrader*, 633 F.3d at 1246–47. Additionally, "[S]poradic or isolated visits to the forum state will not subject the defendant to general jurisdiction." *Id.* at 1247. Even renting or owning property located in a forum such as a server is not enough to confer general jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S. Ct. 2569, 2584 (1977). *See Pfister v. Selling Source, LLC*, 931 F. Supp. 2d 1109, 1116 (D. Nev. 2013) (finding defendant's "server location [in the forum] do[es] not establish the continuous and systematic contacts required for this court to exercise personal jurisdiction over it.").

There is no basis to subject Defendant to general jurisdiction in Colorado. Plaintiff has failed to prove that Defendant's headquarters is in Colorado, has systematic contacts with Colorado— offices, telephone numbers, direct advertising, etc.  In sum, Plaintiff has failed to prove that VegasNAP has any contacts whatsoever with Colorado.

**2. *Dismissal is Necessary Because Defendant is Not Subject to Specific Jurisdiction in this District.***

a. *Purposeful Direction Standard.*

"Purposeful direction" in the tort context "has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics, LLC v. Jolly Dental Grp.*, LLC, 946 F.3d 1223, 1231 (10th Cir. 2020). In *Walden*, the Supreme Court re-articulated the criteria for establishing specific jurisdiction: "[t]he inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" 571 U.S. at 283-84, 134 at 1121 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). The "defendant's suit-related conduct must create a substantial connection with the forum state," and "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State" ... with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 284-85 (citing *Burger King*, 471 U.S. at 475 and *Int'l Shoe Co.*, 326 U.S. at 319) (emphasis in original).

"In all events, the shared aim of 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475); *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995) (concluding "there is no indication that [the forum] had anything but a fortuitous role" in the commission of the alleged tort).

b. *The Tenth Circuit's 2020 XMission Decision.*

In *XMission*, the Tenth Circuit rejected the assertion of specific personal jurisdiction over

a foreign company by a forum-based plaintiff whose "servers and other hardware that it own[ed] and operate[d]" in the forum were allegedly used to transmit thousands of spam emails to forum residents in violation of the CAN-SPAM Act. *XMission*, 955 F.3d at 837. The defendant online marketing company's business model was based on gathering and sharing consumer data to its customers. *Id.* The defendant had "no involvement with or control over the origination, approval, or delivery of the emails." *Id.* at 838.

Among other things, the Tenth Circuit determined that the plaintiff failed to establish jurisdiction because the defendant had no control over the allegedly offending conduct. *Id.* at 846 (focusing on the fact that the defendant "does not see the emails before they are sent by the publishers; know where (i.e., the location or the recipient) the publishers send the emails; or decide the customers to whom the publishers should publish the emails"). The court also rejected plaintiff's argument that jurisdiction could be based on the conduct of defendant's customers, *Walden* found personal jurisdiction cannot "be based merely on contacts with the State by third persons whose activities are in some way intertwined with those of the defendant." *Id.* at 847.

 **c.  Under *Walden* and *XMission*, Defendant is not subject to Specific Jurisdiction in Colorado.**

Like the defendants in both *Walden* and *XMission*, Defendant has not committed intentional acts expressly aimed at Colorado with knowledge that the brunt of any injury would be felt here. Plaintiff's theory of jurisdiction toward VegasNAP is not even outlined in the Complaint. Just because an accused third-party indirectly leases an IP address that was assigned by ARIN to VegasNAP does not amount to an intentional act expressly aimed at Colorado relating to Plaintiff's claim.

### 3. *Assertion of Jurisdiction Would Offend Notions of Fair Play and Substantial Justice.*

A determination of whether the exercise of jurisdiction is so unreasonable as to violate fair play and substantial justice is assessed by considering:

> (1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies. *Old Republic*, 877 F.3d at 909 (internal quotation marks omitted).

Analysis of the relevant factors herein shows that jurisdiction over VegasNAP in Colorado is unreasonable. VegasNAP should not bear the burden of traveling from Nevada to Colorado to defend a lawsuit. VegasNAP's relevant evidence is located in Nevada. There is also no reason to believe that this case would be more efficiently resolved in Colorado than in Nevada. VegasNAP should not be forced to litigate this matter in Colorado.

## **CONCLUSION**

Dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate if: (1) it does not allege sufficient facts to state a plausible claim; or (2) the facts that it does allege do not implicate any cognizable legal theory. Here, plaintiff's complaint fails both because it fails to state any plausible claims and because it fails to meet any cognizable legal theories. Dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(2) is appropriate if a plaintiff has failed to prove a defendant is subject to the personal jurisdiction of the Colorado District Court.

For the foregoing reasons, VegasNAP requests that this Court dismiss the fifth claim in Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and for a lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) with prejudice and that the Court award to VegasNAP its reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

COMPLIANCE WITH CIV. PRACTICE STANDARD 3(F)(1) Pursuant to Civ. Practice Standard 3(F)(1), counsel for Defendant conferred by telephone and email with counsel for Plaintiff prior to filing this motion seeking to explain the issues presented in this motion to dismiss. This discussion included such conferral in connection with the Complaint, after which Plaintiff's counsel did not agree to amend to address the issues raised by Defendant's counsel.

Dated:   April 16, 2024                    Respectfully submitted,


By: __s/ John A. Arsenault_____
John A. Arsenault, Esq.
Galen Peterson, Esq.
J.A. LLC
10901 W. 120th Avenue Suite 120
Broomfield, CO 80021
Phone: (303) 459-7898
Email: John.Arsenault@frontrangelegalservices.com
Galen.Peterson@frontrangelegalservices.co

## CERTIFICATE OF SERVICE

I hereby certify that, on the date below, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

| | |
|---|---|
| Jacob Mateo Baker<br>Iowa #AT0015018<br>10050 Palma Linda Way<br>Apt 201<br>Orlando, FL 32836<br>(707) 327-6984<br>law@jmateobaker.com<br><br>Attorney for Plaintiff<br><br>Dated: April 16, 2024<br>Broomfield, Colorado | <br><br><br><br>FRONT RANGE LEGAL SERVICES<br><br><br>By: _____s/ John A. Arsenault_____<br>John A. Arsenault, Esq.<br>10901 W. 120th Avenue Suite 120<br>Broomfield, CO 80021<br>Phone: (303) 459-7898<br>Email: |

## CERTIFICATION OF NON-USE OF GENERATIVE ARTIFICIAL INTELLIGENCE ("AI")

Under Standing Order Rule C(2), I certify that no portion of this Motion to Dismiss Plaintiff's Complaint was drafted by AI.

Dated April 16, 2024

By: __s/ John A. Arsenault_____
John A. Arsenault, Esq.
Galen Peterson, Esq.
J.A. LLC
10901 W. 120th Avenue Suite 120
Broomfield, CO 80021
Phone: (303) 459-7898
Email: John.Arsenault@frontrangelegalservices.com
Galen.Peterson@frontrangelegalservices.com
Attorneys for Defendant VegasNAP LLC
