IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02616-KAS

ERIC O. HARMS,

 Plaintiff,

v.

DAVID LILLIE,
VIVID INDEPENDENT PUBLISHING LLC, and
VEGASNAP, LLC, doing business as Fiberhub,

 Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

 This matter is before the Court on the **Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Plaintiff's Complaint** [#16] (the "Joint Motion"), filed by Defendants David Lillie ("Lillie") and Vivid Independent Publishing LLC ("Vivid"), and the **Motion to Dismiss Plaintiff's Complaint [for] Failure to State a Claim Upon Which Relief Can Be Granted and for Lack of Personal Jurisdiction** [#22] (the "VegasNAP Motion"), filed by Defendant VegasNAP, LLC ("VegasNAP"). Plaintiff filed Responses [#20, #25] in opposition to the Motions [#16, #22], and Defendants filed Replies [#23, #28]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Joint Motion [#16] is **GRANTED in part** and **DENIED in part**, and the VegasNAP Motion [#22] is **GRANTED**.[1]

_____

[1] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 72.2(d) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#24]; *Order Referring Case to Magistrate Judge* [#26].

## I. Background

According to the Complaint [#2],[2] Defendant Lillie is an artist involved in the production of graphic novels. *Compl.* [#2] ¶ 15. He publishes his graphic novels under the label Vivid Independent Publishing, LLC, which he also owns. *Id.* ¶¶ 16-17. In 2007, Plaintiff created the character QuickXyk a.k.a Xyk ("QuickXyk"), an anthropomorphic coyote who wears a black leather collar with a silver buckle. *Id.* ¶ 14. Between 2008 and 2013, Plaintiff commissioned Defendant Lillie to draw multiple images of QuickXyk, providing Defendant Lillie with oral and visual references of his character and suggestions for character-appropriate scenarios. *Id.* ¶ 18.

On September 28, 2013, Defendant Lillie suggested a collaboration with Plaintiff Eric O. Harms to create a new, original illustrated novella ("the Work"), inspired by the art pieces Plaintiff had commissioned from Defendant Lillie. *Id.* ¶ 19. On September 12, 2015, Defendant Lillie solicited a contract with Plaintiff, offering to write it under terms that involved Plaintiff maintaining ownership of QuickXyk, Defendant Vivid receiving a license to use QuickXyk in the Work, and a 50/50 split of all profits from the Work. *Id.* ¶ 20.

On March 8, 2020, Plaintiff and Defendant Lillie signed Vivid Publication Contract 2.0 ("the Contract") in light of their agreement for Defendant Lillie to produce the Work based on QuickXyk. *Id.* ¶ 21. The Contract did not include a choice-of-law clause. *Id.* ¶ 22. Plaintiff was a resident of Colorado when he signed the Contract; he was also present in Colorado when he signed the Contract. *Id.* ¶¶ 23-24. Defendant Lillie signed the Contract on behalf of Defendant Vivid. *Id.* ¶ 25. Plaintiff received a promise of a

---

[2] For the purposes of resolving the Motions [#16, #22], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in the Complaint [#2]. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court views these allegations in a light most favorable to Plaintiff, the nonmoving party. *Id.*

percentage of future sales as his sole benefit in exchange for licensing QuickXyk. *Id.* ¶ 26.

Plaintiff and Defendant Lillie communicated off and on about the Work from March 8, 2020, to December 30, 2020. *Id.* ¶ 27. As of October 10, 2023, the date Plaintiff filed the Complaint [#2], Plaintiff has received no further communications from Defendant Lillie. *Id.* ¶ 28.

On February 28, 2023, Plaintiff sent Defendants Lillie and Vivid an email containing written notice of his intent to dissolve the Contract, in an attempt to exercise the dissolution clause of the Contract. *Id.* ¶ 29. Later that same day, Defendant Vivid announced in an official newsletter that it was releasing "[a]n illustrated novel in a wild new fantasy setting by David Lillie dropping this spring[sic], featuring Eric Harm's[sic] character 'QuickXyk'." *Id.* ¶ 30. The next day, "Plaintiff received an email from a Vivid address using Vivid stationery that was signed by a party identifying as '-h.'" *Id.* ¶ 31. The e-mail from "-h" acknowledged Plaintiff's request for dissolution, rejected it, and informed Plaintiff that the Work would be given away for free "as a favor to you for your long-time support." *Id.*

On March 5, 2023, Plaintiff sent another email to Defendants Lillie and Vivid with a list of changes Plaintiff claimed would remove QuickXyk from the Work to Plaintiff's satisfaction, while also preserving the Work's salability. *Id.* ¶ 32. Later that day, Plaintiff received an email from Defendant Vivid, again signed by "-h," confirming authority to speak on behalf of Defendant Vivid. *Id.* ¶ 33. In the same email, "-h" claimed that none of the changes Plaintiff requested would be honored, except for the request to remove

Plaintiff's name from the Work. *Id.* ¶ 34. The email from "-h" stated that Defendant Vivid's "decision in this matter is final." *Id.*

Three days later, on March 8, 2023, Defendant Vivid released an official email newsletter that announced a "new free book . . . by Dreamkeepers author David Lillie." *Id.* ¶ 35. The same day, Defendant Vivid published the Work online through a Fiberhub-hosted website where it could be downloaded at no cost. *Id.* ¶ 36. Defendant VegasNAP does business under the name Fiberhub. *Id.* ¶ 4.

In anticipation of legal action, Plaintiff filed for a copyright using a sketch of QuickXyk he had created by his own hand prior to his involvement with Defendants Lillie and Vivid; the copyright was registered on March 19, 2023, under registration number VAu001493040. *Id.* ¶ 37.

Meanwhile, on March 8, 2023, Plaintiff issued a Digital Millennium Copyright Act ("DMCA") request to abuse@fiberhub.com. *Id.* ¶ 38. The Fiberhub email server returned a machine response that same day which confirmed receipt of the request, but, as of the date of the filing of the Complaint [#2], Fiberhub has given no other response to this request. *Id.* ¶¶ 39-40.

Plaintiff issued additional DMCA requests to other websites; these requests were honored and the material in contention removed. *Id.* ¶ 41. Defendant Vivid issued counterclaims to the DMCA requests, stating in part that it affirms the enforceability of the Contract, but that the Contract "grants us full copyrights[sic]." *Id.* ¶¶ 42-43.

On April 6, 2023, Plaintiff issued a second DMCA request to abuse@fiberhub.com and, again, the Fiberhub email server returned a machine response confirming receipt of

the request. *Id.* ¶¶ 44-45. As of the time of the filing of the Complaint [#2], Fiberhub has not provided any other response to the second request. *Id.*

As of the time of the filing of the Complaint [#2], the Work can be downloaded from the Fiberhub-hosted website at no cost, Plaintiff has not received communications from Defendant Vivid to resolve the disagreement, and Plaintiff has not received any benefit, monetary or otherwise, for Defendant Vivid's use of QuickXyk. *Id.* ¶¶ 47-49.

Based on these allegations, Plaintiff asserts five claims: (1) copyright infringement, asserted against Defendants Lillie and Vivid; (2) breach of contract, asserted against Defendants Lillie and Vivid; (3) breach of the implied duty of good faith and fair dealing, asserted against Defendants Lillie and Vivid; (4) unjust enrichment, asserted against Defendants Lillie and Vivid; and (5) violation of "Plaintiff's intellectual property rights by ignoring his properly submitted DMCA requests and continuing to publish the Work online," asserted against Defendant VegasNAP. *Id.* ¶¶ 50-59. Plaintiff seeks damages as well as declaratory and injunctive relief. *Id.* at 9.

In the present Motions [#16, #22], Defendants seek dismissal of all claims asserted against them. In the Joint Motion [#16], Defendants Lillie and Vivid seek dismissal of Plaintiff's first four claims pursuant to Fed. R. Civ. P. 12(b)(6). In the VegasNAP Motion [#22], Defendant VegasNAP seeks dismissal of Plaintiff's fifth claim pursuant to Fed. R. Civ. P. 12(b)(2), or, alternatively, pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Legal Standards

### A.     Fed. R. Civ. P. 12(b)(2)

Fed. R. Civ. P. 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's exercise of personal jurisdiction. The plaintiff bears the burden of

establishing personal jurisdiction over the defendant. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). Where, as here, the court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

Fed. R. Civ. P. 4(k)(1)(A) permits federal courts to exercise personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located;" thus, Rule 4(k)(1)(A) implicates Colorado's long-arm statute. Colorado's long-arm statute provides multiple bases for the exercise of personal jurisdiction, including: (1) the commission of a tortious act in Colorado; (2) transaction of business in Colorado; and (3) the ownership, use, or possession of any real property situated in this state. COLO. REV. STAT. § 13-1-124(1). Additionally, "[t]he Colorado Supreme Court has interpreted Colorado's long-arm statute to extend jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment." *AST Sports Sci.*, 514 F.3d at 1057 (citing *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004)) (referencing *Mr. Steak, Inc. v. Dist. Ct.*, 574 P.2d 95, 96 (Colo. 1978)).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The Due Process Clause requires that the defendant have sufficient "minimum contacts" with the state, so that the exercise of jurisdiction would not violate "traditional conception[s] of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945)). The Supreme Court has distinguished between two kinds of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

A state court may exercise general jurisdiction over any claims against defendants who are "essentially at home" in the state. *Ford*, 592 U.S. at 352 (citing *Goodyear*, 564 U.S. at 919) (quotation marks omitted). In determining whether a forum state may "assert specific jurisdiction over a nonresident defendant," the Court "focuses on the relations among the defendant, the forum, and the litigation." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 779-80 (1984). A plaintiff must establish that: (1) the defendant "purposefully directed" his activities toward the forum state, and (2) the litigation is a result of injuries that "arise out of or relate to" the defendant's contacts with the forum state. *Burger King*, 471 U.S. at 472.

## B.    Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted); *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Walker*, 947 F.3d at 1249. "'[P]lausibility' . . . refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of

conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In short, the Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

### III. Analysis

**A.   Fed. R. Civ. P. 12(g)(2): Propriety of Two Motions to Dismiss**

At the outset, the Court addresses Plaintiff's request for the Court to "set aside" the VegasNAP Motion [#22] on the basis that it is a second motion prohibited by Fed. R. Civ. P. 12(g)(2).[3] *Response* [#25] at 2-4. "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2). The exceptions under Rule 12(h)(2) and (3) are inapplicable here.

Plaintiff argues that, due to the use of broad language, Defendant VegasNAP joined in the relief sought by Defendants Lillie and Vivid in the Joint Motion [#16], even

---

[3] In its Reply [#28], Defendant VegasNAP in turn asks the Court to strike the portion of Plaintiff's Response [#25] which contains Plaintiff's Rule 12(g)(2) argument. *See Reply* [#28] at 2. Fed. R. Civ. P. 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Importantly, Rule 12(f) applies only to material within a "pleading." A "pleading" is defined by Fed. R. Civ. P. 7(a) as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and "if the court orders one, a reply to an answer." Generally, therefore, a motion to strike may not attack motions, briefs, and memoranda. *See Searcy v. Soc. Sec. Admin.*, No. 91-4181, 1992 WL 43490, at *2 (10th Cir. Mar. 2, 1992) (stating that "there is no provision in the Federal Rules of Civil Procedure for motions to strike motions"); *see also* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.37[2] (2025) ("Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, or memoranda, objections, or affidavits may not be attacked by the motion to strike."). Thus, the Court declines to strike Plaintiff's Rule 12(g)(2) argument and addresses it on the merits.

though it was not explicitly named as a movant there. *See Response* [#25] at 2-4; *see also Joint Motion* [#16] at 1 (requesting "dismissal of *all claims*") (emphasis added), 15 (requesting "this Court dismiss Plaintiff's Complaint *in its entirety*") (emphasis added). Plaintiff also argues that, although Defendant VegasNAP may not have been represented by the same counsel as Defendants Lillie and Vivid at the time the Joint Motion [#16] was filed, all Defendants share counsel now. *See Response* [#25] at 3. In Plaintiff's view, the broad language in the Joint Motion [#16], and current representation of all three Defendants by the same counsel, "strongly implies that Lillie, Vivid, and [VegasNAP] were already sharing counsel." *Id.* Plaintiff argues that, although Defendant VegasNAP did not expressly join the Joint Motion [#16], "'[t]he substance of the motion, not its form or label, controls its disposition.'" *Id.* at 2 (quoting *United States v. Armado*, 841 F.3d 867, 871 (10th Cir. 2016)). As such, Plaintiff avers that "the Court should set aside" the VegasNAP Motion [#22]. *Response* [#25] at 4.

Plaintiff relies on *United States v. Armado* to support his argument on this point. *See id.* at 2. However, there are marked differences between that case and the facts here. There, a single criminal defendant moved for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2). *Armado*, 841 F.3d at 869. After the district court denied the motion, the defendant filed another motion for a reduction of sentence pursuant to § 3582(c)(2). *Id.* The district court construed this second motion as a motion to reconsider the denial of the first motion and held that the motion was untimely. *Id.* at 870. After review, the Tenth Circuit held that the district court's treatment of the second motion as a motion to reconsider, rather than an independent motion for a reduction of sentence, was correct. *Id.* at 871. This is because the "Defendant, in effect, moved the district court to reconsider

its prior denial of a reduction of sentence[.]" *Id.* at 872. Thus, although the defendant did not label the motion as a motion to reconsider, "[t]he substance of the motion, not its form or label, control[ed] its disposition." *Id.* at 871.

In the present case, there are multiple defendants filing separate motions, rather than a singular defendant filing successive motions. The Joint Motion [#16] names Defendants Lillie and Vivid as moving parties, and the VegasNAP Motion [#22] names Defendant VegasNAP as the moving party. Further, Defendants Lillie and Vivid's deadline to answer the Complaint [#2] was March 27, 2024, two days before Defendant VegasNAP's initial answer deadline. *See* [#13, #14, #15]. Defendants Lillie and Vivid filed the Joint Motion [#16] before Defendant VegasNAP even entered an appearance in the case. There is also no overlap in content between the two motions, with the Joint Motion [#16] only addressing Plaintiff's first four causes of action. *See Joint Motion* [#16] at 3. Plaintiff only named Defendant VegasNAP as a defendant in his fifth cause of action, and the VegasNAP Motion [#22] only addresses that claim. *See VegasNAP Motion* [#22] at 2-8. Neither "substance" nor "form or label" identifies these two motions as successive motions by the same parties. *See Armado*, 841 F.3d at 871. Thus, the Court considers the VegasNAP Motion [#22] on its merits, and Plaintiff's request under Rule 12(g)(2) is **denied**.

## B.      Fed. R. Civ. P. 12(b)(2): Personal Jurisdiction

Defendant VegasNAP argues that Plaintiff's fifth claim, the sole claim against it, should be dismissed for lack of personal jurisdiction. *VegasNAP Motion* [#22] at 8. This claim asserts violation of "Plaintiff's intellectual property rights by ignoring his properly submitted DMCA requests and continuing to publish the Work online." *Compl.* [#2] ¶ 58.

The federal Copyright Act does not provide for nationwide service of process. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *cf.* 28 U.S.C. § 1400(a) (authorizing commencement of copyright infringement lawsuits "in the district in which the defendant or his agent resides or may be found"). Plaintiff avers that "[p]ersonal jurisdiction over [Defendant VegasNAP] in this case is not based on the Copyright Act[,] but rather on the DMCA. 17 U.S.C. § 512(c)." *Response* [#25] at 12. However, Congress established the DMCA to "supplement[] the regulatory scheme established by the Copyright Act," and both are contained within Title 17. *Med. Imaging & Tech. All. v. Libr. of Cong.*, 103 F.4th 830, 837 (D.C. Cir. 2024) (reading the Copyright Act and the DMCA "as a comprehensive statutory scheme" in the APA rulemaking context); *see also Branch v. Smith*, 538 U.S. 254, 281 (2003) (plurality opinion) (discussing the basic statutory construction principle "that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes[.]"); *Williams v. Licari*, 692 F. Supp. 3d 647, 655-60 (E.D. Tex. 2023) (treating an action brought under the DMCA as "based on copyright infringement" and conducting a due process inquiry to determine personal jurisdiction); *cf. Fallen Prod., Inc. v. Bray*, No. 20-cv-3170-RMR-NRN, 2022 WL 22864396, at *3 (D. Colo. Mar. 28, 2022) (noting that a copyright defendant may be found in any judicial district to which he would be subject to personal jurisdiction.'"); *In re Subpoena to Univ. of N.C*, 367 F. Supp. 2d 945, 957 (M.D.N.C. 2005) ("Section 512(h) says that the copyright owner . . . can seek a subpoena from any district court, but does not say that every district court has jurisdiction to issue a subpoena compelling action from persons outside of the district."). Irrespective of whether Plaintiff's fifth cause of action is brought under the federal Copyright Act or the

DMCA, the Court must "apply the law of the state in which the district court sits[.]" *See Dudnikov*, 514 F.3d at 1070 (discussing personal jurisdiction in the context of the Copyright Act). Here, the Court sits in Colorado, and Colorado law "confers the maximum jurisdiction permissible consistent with the Due Process Clause." *Id.*

Here, Plaintiff asserts that the Court has both general and specific jurisdiction over Defendant VegasNAP.[4] *See Response* [#25] at 12, 15.

### 1.   General Jurisdiction

Plaintiff does not allege that VegasNAP is incorporated under the laws of Colorado. Foreign corporations—those incorporated in sister states or abroad—are not subject to a state court's general jurisdiction by virtue of contractual relationships and business dealings with individuals or entities in the forum state. *See Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011). Instead, a court must inquire into the nature and degree of these commercial activities. *See id.* "In order for general jurisdiction to lie, a foreign corporation must have a substantial amount of contacts with the forum state." *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

To determine whether a corporate defendant is "at home" in the forum state, and thus subject to general jurisdiction, courts have considered such factors as:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on

---

[4] Plaintiff omits any basis for personal jurisdiction over Defendant VegasNAP in his Complaint [#2]. Plaintiff's positions regarding personal jurisdiction over Defendant VegasNAP are provided in Plaintiff's Response [#25] to the VegasNAP Motion [#22]. While a party generally may not respond with new allegations to survive a Rule 12(b)(6) motion, a party responding to a Rule 12(b)(2) dismissal motion may make a prima facie showing of personal jurisdiction "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). As discussed below, the Court finds that the factual allegations in the Response [#25] do not alter the Court's conclusion that Plaintiff has failed to make a prima facie showing of personal jurisdiction over Defendant VegasNAP.

a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

*Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 457 (10th Cir. 1996) (quoting *Trierweiler*, 90 F.3d at 1533). Defendant VegasNAP argues that "Plaintiff has failed to establish . . . that [Defendant VegasNAP] has employees located in Colorado, has ever recruited employees in Colorado, has ever been registered to do business in Colorado, ever owned or operated any offices in Colorado, maintained any bank accounts in Colorado, advertises directly to Colorado residents, or had any telephone listings in Colorado." *VegasNAP Motion* [#22] at 8-9. Without citation to legal authority, Plaintiff responds that "[g]eneral personal jurisdiction is appropriate against a company built from loans taken from Colorado-based lenders, providing current web services to a Colorado-based company, and resolving a Chapter 11 bankruptcy by paying back a Colorado-based federal office." *Response* [#25] at 12.

Plaintiff makes no argument that Defendant VegasNAP is "at home" in Colorado under the four *Kuenzle* factors and, indeed, nothing in the record before the Court indicates that Defendant VegasNAP has a traditional physical presence in Colorado. *See Shrader*, 633 F.3d at 1243 ("A web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions *on a sustained basis with a substantial number of residents* of the forum.") (citation and internal quotation marks omitted) (emphasis in original). In *Shrader v. Biddinger*, the plaintiff sued the operators of an internet forum where an allegedly defamatory email was posted. *Id.* at 1237-38. The plaintiff there argued that general jurisdiction was appropriate because (1) he, as a resident of the forum

state, "purchased books, courses, and a data feed from [the website];" (2) another forum resident had also purchased items from the website; and (3) the website had advertised in a magazine available for purchase in the forum. *Id.* at 1244. The Tenth Circuit held that this was "clearly insufficient to warrant the exercise of general personal jurisdiction[.]" *Id.*

Plaintiff's allegation that Defendant VegasNAP sells its hosting services to one Colorado business does not demonstrate that Defendant VegasNAP is "at home" in Colorado. *Cf. Inspired by Design, LLC v. Sammy's Sew Shop, LLC*, 200 F. Supp. 3d 1194, 1203 (D. Kan. 2016) (finding insufficient contacts to support general personal jurisdiction in Kansas where the defendant's website was accessible to Kansas residents and the defendant had shipped two orders to Kansas). Acceptance of Plaintiff's arguments might render Defendant VegasNAP "at home"—and subject to general jurisdiction—in every state in the country, which "would eviscerate the personal jurisdiction requirement as it currently exists[.]" *Agape Flights, Inc. v. Covington Aircraft Engines, Inc.*, 771 F. Supp. 2d 1278, 1288 (E.D. Okla. 2011) (citation and internal quotation marks omitted); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) ("Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.") (citation and internal quotation marks omitted). Thus, the Court finds that Plaintiff has not made a prima facie showing that the Court has general personal jurisdiction over Defendant VegasNAP.

## 2.    Specific Jurisdiction

"Even though a defendant's forum state contacts may not support general jurisdiction, they may still meet the less stringent standard for specific jurisdiction if

sufficiently related to the cause of action." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017). To support specific personal jurisdiction, Plaintiff must make a prima facie showing that (1) Defendant VegasNAP "purposely directed" its activities at the state of Colorado, and (2) Plaintiff's alleged injuries "arise out of or relate to those activities." *See Burger King*, 471 U.S. at 472 (citation and internal quotation marks omitted). Plaintiff argues that specific personal jurisdiction over Defendant VegasNAP is appropriate because Defendant VegasNAP's contacts with Colorado are "purposeful, directed, and reliable[.]" *Response* [#25] at 12.

### a.    The "Purposely Directed" Requirement

The first prong of a specific personal jurisdiction determination, "[p]urposeful direction[,] is a product of both the quantity and quality of a defendant's contacts with the forum." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). "The requirement ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction." *Id.* at 840-41 (internal citations and quotation marks omitted).

Under this first prong, Plaintiff identifies some activities undertaken by Defendant VegasNAP in Colorado. *See Response* [#25] at 11 ("[Defendant VegasNAP] has at least one Colorado-based client receiving their web hosting services, they took money from Colorado lenders, and they are currently paying off debts to federal offices in Colorado."). In the Complaint [#2], Plaintiff also mentions that he received two "machine" responses from Defendant VegasNAP, confirming receipt of the two DMCA requests. *See Compl.* [#2] ¶¶ 39, 45. However, this sparse list of connections to Colorado is exactly the type of

"random, fortuitous, or attenuated contacts" which do not support specific jurisdiction. *See AST Sports Sci.*, 514 F.3d at 1058 (citation and quotation marks omitted). Thus, the Court finds that Plaintiff has not adequately alleged that Defendant VegasNAP purposely directs its conduct at the state of Colorado.

### b.    The "Arise Out of or Relate To" Requirement

Even if Plaintiff had adequately alleged purposeful direction, his specific jurisdiction argument would still fail on the second prong. The second prong, "[t]he arising-out-of component of the test[,] requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." *XMission*, 955 F.3d at 840. The "defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. The substantial connection "must arise out of contacts that the defendant *himself* creates with the forum State[,]" and the court's analysis focuses on the contacts "with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 285 (citations and internal quotation marks omitted) (emphasis in original).

Under this second prong, Plaintiff identifies certain forum activities which are connected to his fifth cause of action. *See Response* [#25] at 11 ("[T]he DMCA takedown notice properly informed [VegasNAP] that a party in Colorado found potentially infringing material on a website they hosted."); 13-14 ("The Contract that began the events that led to the copyright infringement appearing on [Defendant VegasNAP's] web hosting servers was signed in Colorado."); 13 ("The DMCA notice sent to [Defendant VegasNAP] was sent from Colorado."); 13 ("The Plaintiff is a resident of Colorado."); *see also Compl.* [#2] ¶¶ 24, 38-39, 44-45. Most of these events, though, do not arise out of contacts that the

"defendant *[it]self*" created with Colorado. *See Burger King*, 471 U.S. at 475. Thus, the Court finds that Plaintiff has not adequately alleged a sufficient link between Defendant VegasNAP's conduct in Colorado and Plaintiff's fifth claim, i.e., the sole claim asserted against Defendant VegasNAP.

The Court finds that Plaintiff has failed to make a prima facie showing that this Court has either general personal jurisdiction or specific personal jurisdiction over Defendant VegasNAP. Accordingly, the VegasNAP Motion [#22] is **granted**, Plaintiff's fifth claim is **dismissed without prejudice**, and Defendant VegasNAP is **dismissed** from this suit. *See e.g.*, *Hollander v. Sandoz Pharms. Corp.*, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (stating that dismissal for lack of personal jurisdiction under Rule 12(b)(2) should be without prejudice).[5]

## C.   Fed. R. Civ. P. 12(b)(6): Failure to State a Claim

In the Joint Motion [#16], Defendants Lillie and Vivid seek dismissal of Plaintiff's first four claims under Fed. R. Civ. P. 12(b)(6).

At the outset, the Court must determine whether several documents not attached to the Complaint [#2] may be considered in its adjudication of the Rule 12(b)(6) arguments. In his Complaint [#2], Plaintiff alleges that "this civil action originated with the Copyright Claims Board ("CCB") where all opportunities for resolution were exhausted when Lillie opted out of CCB Docket number 23-CCB-0120, thereby dismissing the case without prejudice." *Compl.* [#2] ¶ 7. For the first time in his Response [#20], Plaintiff identifies documents which may be viewed on the CCB website as part of that prior

---

[5] In light of the Court's conclusion that personal jurisdiction is lacking, the Court does not address Defendant VegasNAP's alternative argument for dismissal under Rule 12(b)(6). *See VegasNAP Motion* [#22] at 2-8.

litigation. *See Response* [#20] at 5-6. Plaintiff did not attach these documents to his Complaint [#2] or his Response [#20]. However, Plaintiff asks the Court to consider the documents in ruling on the Joint Motion [#16]. *See id.* These documents purport to be: (1) a copy of the Contract; (2) Plaintiff's complaint in the CCB proceeding; (3) a receipt for the QuickXyk copyright registration which Plaintiff received from the Library of Congress; (4) the Service Packet from the CCB proceeding; (5) proof of service on Defendant Lillie from the CCB proceeding; and (6) "the opt-out from Lillie" in the CCB proceeding. *Id.*

Normally, when considering a motion to dismiss, a court must disregard facts supported by documents other than the complaint, unless it first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, on a motion to dismiss, a court may consider documents outside the complaint in three instances. First, a court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), which is inapplicable here. *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, a court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Third, a court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint if "indisputably authentic" copies are submitted to the court. *GFP Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

The second exception may be applicable to the five copyright/CCB-related documents which the Court can readily authenticate, excluding the alleged copy of the Contract. *See* Fed. R. Evid. 201(b); *Island Software & Comput. Serv. Inc. v. Microsoft*

*Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (noting that district courts are entitled to take judicial notice of federal copyright registrations, as published in the Copyright Office's registry). However, even assuming that those five documents could be considered, they have no material impact on (or relevance to) the resolution of the Joint Motion [#16] because the Court already accepts the well-pleaded allegations in the Complaint [#2] as true. *See Iqbal*, 556 U.S. at 678. The same can be said about Plaintiff's original complaint to the CCB, the Service Packet, the proof of service for the CCB proceeding, and the opt-out from the CCB proceeding by Defendant Lillie.

Under the third exception, Plaintiff asks the Court to consider the copy of the Contract because it is a public document, quoted in the Complaint, central to the claims, and lacks any authenticity challenge. *See Response* [#20] at 7. The Court disagrees. As conceded by Plaintiff, Defendants Lillie and Vivid "suggest[] multiple times that the Contract mentioned in the Complaint may not exist." *Id.* at 6; *see Joint Motion* [#16] at 8-13. Thus, the Court finds that the copy of the Contract is not "indisputably authentic." *GFP Corp.*, 130 F.3d at 1384. This case differs from those where courts have considered documents outside the pleadings in a Rule 12(b)(6) context. *See e.g.*, *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (approving lower court's consideration of outside documents referenced in the complaint where "all the parties invited the district court to consider these works"); *see also Chilcoat v. San Juan County*, 41 F.4th 1196, 1203 n.1 (10th Cir. 2022) (relying on a preliminary hearing transcript, which was a matter of public record, directly quoted in the complaint, central to the plaintiff's claims, and the authenticity of which was unchallenged). Here, Defendants Lillie and Vivid

ask the Court not to consider the copy of the Contract. Therefore, the Court will not consider it in deciding the Joint Motion [#16].

### 1.    Copyright

In the Joint Motion [#16], Defendants Lillie and Vivid first seek dismissal of Plaintiff's copyright infringement claim. *See Joint Motion* [#16] at 4-8. Pursuant to 17 U.S.C. § 106(1)-(3) of the Copyright Act, a copyright owner has the exclusive rights to reproduce the copyrighted work, to prepare derivative works based on the copyrighted work, and to distribute copies of the copyrighted work to the public. Under 17 U.S.C. § 501(a)-(b), the copyright owner may pursue a cause of action against anyone who violates these rights. A copyright infringement claim contains two elements: (1) "the plaintiff's ownership of a valid copyright," and (2) "the defendant's violation of an exclusive ownership right." *I Dig Tex., LLC v. Creager*, 98 F.4th 998, 1006 (10th Cir. 2024) (citation omitted).

### a.    Plaintiff's Ownership of a Valid Copyright

Under the first element, Plaintiff alleges three facts relevant to his ownership of the QuickXyk copyright: (1) "[i]n 2007, Plaintiff created the character of QuickXyk a.k.a. Xyk . . . an anthropomorphic coyote wearing a black leather collar with a silver buckle," *Compl.* [#2] ¶ 14; (2) "Plaintiff filed for a copyright using a sketch of QuickXyk he had created by his own hand prior to his involvement with Vivid or Lillie," *id.* ¶ 37; and (3) "[t]he copyright was registered on March 19, 2023, under registration number VAu001493040," *id.* The Court takes Plaintiff's well-pleaded allegations as true. *See Iqbal*, 556 U.S. at 678. Thus, the Court finds Plaintiff has plausibly stated the first element of his copyright infringement claim by adequately alleging ownership of a valid copyright.

### b.    Defendant's Violation of an Exclusive Ownership Right

The second element of a copyright infringement claim is "the defendant's violation of an exclusive ownership right." *I Dig Tex.*, 98 F.4th at 1006. "The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 348 (1991). In fact, "[t]he second element in a copyright-infringement action 'consists of two components.'" *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1101 (10th Cir. 2020) (quoting *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016)). Plaintiff must adequately allege (1) "factual copying," *Craft Smith*, 969 F.3d at 1101, and (2) show "substantial similarity between the allegedly infringing work and the elements of the copyrighted work that are legally protected." *Blehm v. Jacobs*, 702 F.3d 1193, 1199 (10th Cir. 2012) (citation and internal quotations omitted).

### i.    Factual Copying

"'[U]s[ing] the plaintiff's [product] as a model, template, or inspiration' demonstrates factual copying." *Craft Smith*, 969 F.3d at 1101 n.12 (quoting 4 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 13.01[B] (2020)). Plaintiff alleges several relevant facts relevant: (1) "Plaintiff commissioned Lillie to draw multiple images of his QuickXyk character, providing Lillie with oral and visual references of his character and suggestions for character-appropriate scenarios," *Compl.* [#2] ¶ 18; (2) "Lillie suggested a collaboration with Plaintiff to create a new original illustrated novella ('the Work') inspired by the art pieces Plaintiff had commissioned from Lillie," *id.* ¶ 19; (3) "Vivid announced in an official newsletter that it was releasing '[a]n illustrated novel in a wild new fantasy setting by David Lillie dropping this spring[sic], featuring Eric Harm's[sic] character

"QuickXyk,"'" *id.* ¶ 30; and (4) "Vivid published the Work online through a website," *id.* ¶ 36. The Court takes Plaintiff's well-pleaded allegations as true, and they render plausible Defendant Lillie's use of QuickXyk as a "model, template, or inspiration" for the Work. Thus, the Court finds that Plaintiff has plausibly alleged the factual copying requirement of his copyright infringement claim.

ii.     **Substantial Similarity**

"To decide the substantial similarity issue, a court must determine (1) which elements of the copyrighted work are protectable, and (2) whether these elements are substantially similar to the accused work." *Savant Homes*, 809 F.3d at 1138; *see also Blehm*, 702 F.3d at 1200. This question is a mixed question of law and fact and "determines whether a defendant's factual copying constitutes actionable infringement." *Blehm*, 702 F.3d at 1199.

Defendants Lillie and Vivid argue that "based solely on" Plaintiff's allegations, "it is impossible to determine not only whether the alleged sketch that is the source of this claim includes any protectable elements, but also whether the sketch bears any resemblance to [the Work]." *Joint Motion* [#16] at 6. Defendants Lillie and Vivid also argue that Plaintiff "baselessly conflat[es] through speculation and innuendo" that Defendant Lillie's actions and those of his company, Defendant Vivid, "are one and the same," and Plaintiff "has alleged no facts whatsoever that Defendant Lillie as an individual infringed Plaintiff's copyrighted work[.]" *Id.* at 7.

Here, the Court finds that Plaintiff has failed to "nudge[] [his] claim[] across the line from conceivable to plausible" on any substantial similarity between the protected aspects of QuickXyk and the allegedly infringing Work. *See Robbins*, 519 F.3d at 1247 (citation

and internal quotation marks omitted). Plaintiff includes only one fact relevant to this determination in his Complaint [#2], that QuickXyk is "an anthropomorphic coyote wearing a black leather collar with a silver buckle." *Compl.* [#2] ¶ 14. This vague description is not bolstered by any visual representation of the protected elements.[6] Plaintiff asks the Court to refer to the Contract's terms, which Plaintiff contends "shows Defendants had intended from the start copy QuickXyk." *Response* [#20] at 9. Whether Defendant Vivid[7] ultimately released the Work with elements substantially similar to those protected under Plaintiff's copyright is, at best, "sheer possibility"—not "plausibility." *See Iqbal*, 556 U.S. at 678. Thus, the Court finds Plaintiff has failed to plausibly allege the substantial similarity requirement of his copyright infringement claim.

Accordingly, the Joint Motion [#16] is **granted in part**, to the extent that Plaintiff's first claim is **dismissed without prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (stating that dismissing a claim with prejudice is only

---

[6] Copyright plaintiffs often attach a certificate of registration from the Copyright Office to their pleadings. *See Craft Smith*, 969 F.3d at 1099. The certification constitutes prima facie evidence of the ownership of a valid copyright and allows the court to examine the copyright's parameters. *See id.* at 1099-1105; *see also* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of registration . . . shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."). The Receipt, on the other hand, does not contain sufficient information to allow the Court to examine the copyright's parameters. It states that "[r]egistration [is] based on the artwork in the 2-D artwork," and that the "[c]opyright does not protect names, titles, short phrases or slogans." *Receipt*, https://dockets.ccb.gov/publishedRecord/download/3136?fileHolderId=8443 (as cited in Plaintiff's Response [#20] at 5 n.4) (last visited March 9, 2025). The "2-D artwork" on which the copyright is based is not viewable on the Receipt, however. *Id.*

[7] In his Response [#20], Plaintiff argues that Defendant Lillie, as an individual, should be held liable for the actions of Defendant Vivid under the "alter ego" theory. *See Response* [#20] at 9. As discussed in more detail in Section III.C.2.b, Plaintiff has not alleged sufficient facts in his Complaint [#2] to support an alter ego theory of liability. Thus, even assuming that Plaintiff had alleged adequate facts to support a copyright infringement claim against Defendant Vivid, Plaintiff would still have failed to adequately allege a copyright infringement claim against Defendant Lillie in his individual capacity.

"appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile").

### 2. Breach of Contract

Next, Defendants Lillie and Vivid seek dismissal of Plaintiff's breach of contract claim. *See Joint Motion* [#16] at 8-11. In their briefs, both Plaintiff and Defendants Lillie and Vivid analyze Plaintiff's breach of contract claim under Colorado law. *See Joint Motion* [#16] at 8-11; *Response* [#20] at 9-12; *Reply* [#23] at 8-10. In his Complaint [#2], Plaintiff alleges that "[t]he Contract did not and has never included a Choice of Law clause." *Compl.* [#2] ¶ 22. Neither Plaintiff nor Defendants Lillie and Vivid argue choice-of-law in relation to Plaintiff's breach of contract claim. Regardless, the Court is unaware of any material differences between breach of contract claims under Colorado law and under Michigan law, where Defendants Lillie and Vivid reside, *see Compl.* [#2] ¶¶ 2-3. The Court therefore analyzes this claim under Colorado law given that both Plaintiff and Defendants Lillie and Vivid rely on it. *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that [a particular state] law applies, [the court] will proceed under the same assumption.").

Under Colorado law, a breach of contract claim contains four elements: "(1) the existence of a contract, (2) the plaintiff's performance of the contract or justification for nonperformance, (3) the defendant's failure to perform the contract, and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract." *Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024). The Court analyzes this claim as asserted against Defendant Vivid first, and then against Defendant Lillie.

### a. Defendant Vivid

Under the first element, Plaintiff alleges the existence of a contract with the following facts: (1) "On September 12, 2015, Lillie solicit[ed] a contract with Plaintiff, offering to write it under terms that involve Plaintiff maintaining ownership of QuickXyk, Vivid receiving a license to use QuickXyk in the Work, and a 50/50 split of all profits from the Work," *Compl.* [#2] ¶ 20; (2) "On March 8, 2020, Plaintiff and Lillie signed Vivid Publication Contract 2.0 . . . in contemplation of their agreement for Lillie to produce the Work based on Plaintiff's character of QuickXyk," *id.* ¶ 21; and (3) "Lillie signed the Contract on behalf of Vivid," *id.* ¶ 25. Defendants Lillie and Vivid argue that "Plaintiff failed to attach any exhibits to prove the existence of the alleged contract with Plaintiff . . . nor did it include any of the terms of the alleged agreement[.]" *Joint Motion* [#16] at 8. At this early stage of the proceedings, though, Plaintiff need not *prove* the Contract's existence. These well-pleaded facts, when accepted as true, are "enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Thus, the Court finds that Plaintiff has plausibly stated the existence of the Contract.

Under the second element, Plaintiff alleges his performance of the Contract by pleading that he and "Lillie communicated off and on about the Work [that Lillie was to produce based on Plaintiff's QuickXyk character] from March 8, 2020 [the contract execution date], to December 30, 2020." *Compl.* [#2] ¶ 27; *see also id.* ¶ 21. Plaintiff also alleges, "[o]n February 28, 2023, [he] exercised his right under the dissolution clause of the Contract by sending Vivid and Lillie an e-mail containing written notice of his intent to dissolve." *Id.* ¶ 29. Though Plaintiff's allegations are very limited, he has plausibly alleged performance under the terms of the Contract.

Under the third element, Defendant Vivid's failure to perform under the Contract, Plaintiff alleges the following: (1) the day after Plaintiff allegedly exercised his right to dissolve the Contract, he "received an email from a Vivid address using Vivid stationery that was signed by a party identifying as '-h' acknowledging Plaintiff's request for dissolution, rejecting it, and informing Plaintiff that the Work would be given away for free," *Compl.* [#2] ¶ 31; (2) four days later, "Plaintiff received an e-mail from Vivid signed by '-h' confirming authority to speak on behalf of Vivid," *id.* ¶ 33; (3) three days later, "Vivid published the Work online . . . where it could be downloaded at no cost," *id.* ¶ 36; and (4) "[a]s of the time of this filing, the Work can be downloaded from the . . . website at no cost," *id.* ¶ 47. These facts, taken as true, allege "more than a sheer possibility" that Defendant Vivid has acted unlawfully. *See Iqbal*, 556 U.S. at 678. Plaintiff alleges that Defendant Vivid, through an agent, rejected his valid exercise of the Contract's dissolution clause, and, instead, disseminated the Work to the public for free. These facts, accepted as true, allow the Court to "draw the reasonable inference" that Defendant Vivid breached the Contract by failing to honor Plaintiff's notice of dissolution. *See id.* Thus, the Court finds that Plaintiff has plausibly stated Defendant Vivid's failure to perform under the Contract.

Under the fourth element, Plaintiff alleges damages resultant from Defendant Vivid's breach with the following facts: (1) after the alleged dissolution, "-h" sent an email "informing Plaintiff that the Work would be given away for free 'as a favor to you for your long-time support,'" *id.* ¶ 31; (2) "Plaintiff has not received any benefit, monetary or otherwise, for Vivid's use of QuickXyk," *id.* ¶ 49; and (3) "Vivid and Lillie's infringement of Plaintiff's intellectual property has caused Plaintiff economic harm in the future value of

QuickXyk, costs in attempting to defend his intellectual property, and emotional distress," *id.* ¶ 51. Because the Court views the facts in a light most favorable to Plaintiff, as the nonmovant, *see Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), the Court finds that Plaintiff has plausibly alleged damages due to Defendant Vivid's alleged breach.

Therefore, the Court finds that Plaintiff has plausibly stated a claim of breach of contract against Defendant Vivid. Accordingly, the Joint Motion [#16] is **denied in part** with respect to this claim against Defendant Vivid.

### b.    Defendant Lillie

Conversely, the Court finds that Plaintiff's breach of contract claim against Defendant Lillie is not plausible on its face. The Court agrees with Defendants Lillie and Vivid that "Plaintiff has alleged no facts whatsoever [regarding] . . . how Defendant Lillie should be joined" to this claim. *Joint Motion* [#16] at 7.

Plaintiff argues that Defendant Vivid should be treated as Defendant Lillie's "alter ego." *See Response* [#20] at 9. In support of this theory of liability, Plaintiff cites both Michigan and Colorado case law. *See Response* [#20] at 9. First, Plaintiff cites *Florence Cement Company v. Vettraino*, for the proposition that, "where members do not treat an artificial entity [i.e., an LLC] as separate from themselves, neither will" Michigan courts. 807 N.W.2d 917, 923 (Mich. Ct. App. 2011); *see Response* [#20] at 9. Second, Plaintiff cites *Fink v. Montgomery Elevator Company of Colorado*, arguing that Colorado has adopted this alter ego doctrine. 421 P.2d 735, 739 (Colo. 1966); *see Response* [#20] at 9. For the first time in his Response [#20], and without reference to legal authority, Plaintiff argues that Defendant "Vivid has only ever filed its articles of incorporation and mandatory annual statements" on the "online filing system maintained by the Michigan Department

of Licensing and Regulatory Affairs," which "implies that Vivid is a 'mere instrumentality' under Michigan law." *Response* [#20] at 9.

Under Michigan law, for the Court "to order a corporate veil to be pierced, the corporate entity (1) must be a mere instrumentality of another individual or entity, (2) must have been used to commit a wrong or fraud, and (3) there must have been an unjust injury or loss to the plaintiff." *Florence Cement*, 807 N.W.2d at 922. In *Florence Cement*, the at-issue corporate entity was deemed a mere instrumentality for the defendants who transferred real property between themselves and the corporate entity without a formal transfer, reimbursed themselves for various development costs from the corporate entity's accounts, and treated their personal liabilities as the corporate entity's liabilities. *See id.* at 922-23.

Colorado law requires a three-part inquiry before a court may pierce the corporate veil. *Dill v. Rembrandt Grp., Inc.*, 474 P.3d 176, 183 (Colo. App. 2020). First, a court must "determine whether the corporate entity is the alter ego of the person or entity in issue." *Id.* Courts consider several factors in this determination, "including whether (1) the corporation or LLC operates as a distinct business entity; (2) the two entities commingle funds and assets; (3) the two entities maintain inadequate corporate records; (4) the nature and form of the entities' ownership and control facilitates misuse by an insider; (5) the corporation or LLC is 'used as a "mere shell;"' (6) 'the business [i]s thinly capitalized;' (7) legal formalities are disregarded; and (8) corporate funds or assets are used for noncorporate purposes." *Id.* at 183-84 (citations omitted).

The Court does not consider the allegations Plaintiff provides for the first time in his Response [#20], because they are not contained "within the four corners of the

complaint." *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). In the Complaint [#2], Plaintiff pleads the following facts relevant to this claim: (1) "Lillie publishes his graphic novels under the label [Vivid]," *Compl.* [#2] ¶ 16; (2) "Lillie is the owner of Vivid," *id.* ¶ 17; and (3) "Lillie signed the Contract on behalf of Vivid," *id.* ¶ 25. These facts, accepted as true and viewed in the light most favorable to Plaintiff, do not suggest that Defendant Lillie signed the Contract in his personal capacity and do not provide enough information to support an alter ego theory under either Michigan law or Colorado law.

The Court therefore finds that Plaintiff has failed to plausibly state a claim of breach of contract against Defendant Lillie. Accordingly, the Joint Motion [#16] is **granted in part**, to the extent that Plaintiff's second claim, against Defendant Lillie only, is **dismissed without prejudice**. *See Brereton*, 434 F.3d at 1219.

### 3.    Breach of the Implied Duty of Good Faith and Fair Dealing

Defendants Lillie and Vivid next seek dismissal of Plaintiff's breach of the implied duty of good faith and fair dealing claim. *See Joint Motion* [#16] at 11-13. On this issue, neither Plaintiff nor Defendants Lillie and Vivid make a choice of law argument. Also, the parties utilize only Colorado case law to support their respective positions. Thus, for the purpose of resolving the Joint Motion [#16], the Court analyzes this issue under Colorado law.

In Colorado, courts recognize an implied duty of good faith and fair dealing in every contract. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). A party may rely on this implied duty only when a specific contract term grants either party discretion over the manner of performance. *Id.* (citing *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 877 (5th Cir. 1989)).

The Court finds that Plaintiff's claim for relief based on the implied duty of good faith and fair dealing is not plausible on its face. In his Complaint [#2], Plaintiff does not allege that the Contract granted Defendant Lillie or Defendant Vivid the discretion to set terms, such as "quantity, price, or time." *See Amoco Oil*, 908 P.2d at 498. Plaintiff argues that Defendants Lillie and Vivid breached their implied duty by setting the price for the Work at zero after Plaintiff had already "exercised his right under the dissolution clause of the Contract." *See Compl.* [#2] ¶¶ 29, 31; *see also Response* [#20] at 12-13. Because the Complaint [#2] contains no allegation that the Contract gave pricing discretion to Defendant Lillie or Defendant Vivid, Plaintiff has failed to plausibly state a claim of breach of the implied duty of good faith and fair dealing. *See Amoco Oil*, 908 P.2d at 498.

Accordingly, the Joint Motion [#16] is **granted in part**, to the extent that Plaintiff's third claim is **dismissed without prejudice**. *See Brereton*, 434 F.3d at 1219.

### 4.    Unjust Enrichment

Finally, Defendants Lillie and Vivid seek dismissal of Plaintiff's unjust enrichment claim. *See Joint Motion* [#16] at 13-15. Under Colorado law, an unjust enrichment claim contains three elements: "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *DBC Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998).

Under the first prong, Plaintiff must adequately allege that any benefit Defendants Lillie and Vivid received came at his expense. *See id.* Plaintiff alleges that he "has not received any benefit, monetary or otherwise, for Vivid's use of QuickXyk." *Compl.* [#2] ¶ 49. He also alleges that Defendant Lillie was the one who solicited the Contract to license QuickXyk. *Id.* ¶ 20. From there, the Court makes the "reasonable inference" that QuickXyk

had some undetermined value. *See Iqbal*, 556 U.S. at 678. Before the formation of the Contract, Plaintiff controlled QuickXyk's value and could license it in hopes of profit. *See Compl.* [#2] ¶¶ 14, 18, 20. Now that Defendants Lillie and Vivid have released QuickXyk to the public for free, any licensing value is likely diminished. Thus, the Court finds that Plaintiff plausibly stated the first prong of his unjust enrichment claim.

Under the second prong, Plaintiff must adequately allege that Defendants Lillie and Vivid were "benefited or enriched." *See DCB Constr.*, 965 P.2d at 120. Plaintiff pleads the following facts: (1) "Vivid announced in an official newsletter that it was releasing '[a]n illustrated novel in a wild new fantasy setting by David Lillie dropping this spring, featuring Eric Harm's [sic] character "QuickXyk,"'" *Compl.* [#2] ¶ 30; and (2) "Vivid released [another] official email newsletter that announced a 'new free book . . . by Dreamkeepers author David Lillie,'" *id.* ¶ 35. Plaintiff argues that "Defendants used the Work to promote their website, making multiple announcements of the Work online." *Response* [#20] at 14. Based on Plaintiff's allegations, the Court finds that Plaintiff plausibly stated the second prong of his unjust enrichment claim.

Under the third prong, Plaintiff must adequately allege that it would be unjust to allow Defendants Lillie and Vivid to retain the benefit conferred without paying its value. *See DBC Constr. Co.*, 965 P.2d at 119-20. "The notion of what is or is not 'unjust' is an inherently malleable and unpredictable standard." *Id.* at 120. Plaintiff alleges facts in his Complaint [#2] which, read together, create the following timeline: (1) Plaintiff created QuickXyk; (2) Defendants Lillie and Vivid, over Plaintiff's objection, released the character to the public for free; and (3) Defendants Lillie and Vivid used the release for publicity purposes while diminishing the character's monetary value. *See Compl.* [#2] ¶¶ 14, 31,

34, 36. Based on Plaintiff's allegations, the Court finds that Plaintiff plausibly stated the third prong of his unjust enrichment claim.

In the Tenth Circuit, an unjust enrichment claim "is a remedy designed for circumstances in which other remedies are unavailable." *W. Ridge Grp., LLC v. First Tr. Co. of Onaga*, 414 F. App'x 112, 120 (10th Cir. 2011). "As such, it is not available as a mere alternative legal theory when the subject is covered by an express contract." *Id.* (citing *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 819 (Colo. App. 2003)). However, two exceptions to this limitation exist: (1) "a party can recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract," or (2) "a party can recover on a quasi-contract when the party 'will have no right under an enforceable contract.'" *Interbank Invs.*, 77 P.3d at 816 (citations and internal quotation marks omitted). Under the second exception, "quasi-contractual recovery may be allowed when an express contract failed or was rescinded." *Id.*

Although Plaintiff may not ultimately recover on a theory of unjust enrichment if the Contract is later found to control, the Federal Rules of Civil Procedure allow him to include alternative or inconsistent claims in his complaint. Fed. R. Civ. P. 8(d)(3); *see also Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, No. 11-cv-00970-PAB-MEH, 2013 WL 6925132, at *3 (D. Colo. Dec. 13, 2013) (collecting cases). At this stage in the proceedings, Plaintiff is not barred from bringing his unjust enrichment claim in the alternative to his breach of contract claim. *See United Water & Sanitation Dist. v. Geo-Con, Inc.*, 488 F. Supp. 3d 1052, 1057-59 (D. Colo. 2020) (allowing unjust enrichment

claim to survive Rule 12(b)(6) motion as an alternative to plaintiff's breach of contract claim).

The Court finds that Plaintiff has plausibly stated a claim of unjust enrichment against Defendants Lillie and Vivid. Accordingly, the Joint Motion [#16] is **denied in part**, with respect to this claim.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Joint Motion [#16] is **GRANTED in part** and **DENIED in part**. The Joint Motion [#16] is **granted** to the extent that Plaintiff's first claim: copyright infringement; second claim against Defendant Lillie only: breach of contract; and third claim: breach of the implied duty of good faith and fair dealing, are **DISMISSED without prejudice**. The Joint Motion [#16] is **denied** to the extent Defendants Lillie and Vivid seek dismissal of Plaintiff's second claim against Defendant Vivid: breach of contract, and Plaintiff's fourth claim: unjust enrichment.

IT IS FURTHER **ORDERED** that the VegasNAP Motion [#22] is **GRANTED**, that Plaintiff's fifth cause of action against Defendant VegasNAP is **DISMISSED without prejudice** pursuant to Rule 12(b)(2) for lack of personal jurisdiction, and that Defendant VegasNAP is **DISMISSED** from this suit.

Dated: March 9, 2025                                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge