IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02616-KAS

ERIC O. HARMS,

      Plaintiff,

v.

DAVID LILLIE, and
VIVID INDEPENDENT PUBLISHING LLC,

      Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on Defendants' **Motion for Summary Judgment** [#50] and Plaintiff's **Motion for Partial Summary Judgment Under Fed. R. Civ. P. 56(a)** [#51]. The parties filed Responses [#55, #56] in opposition to each other's Motions [#50, #51], and they each filed Replies [#57, #58] in support of their own. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, Defendants' Motion [#50] is **GRANTED in part and DENIED in part**, and Plaintiff's Motion [#51] is **DENIED**.[1]

## I. Background

      In his Motion [#51], Plaintiff Eric Harms seeks entry of summary judgment in his favor on his first four causes of action. In their Motion [#50], Defendants seek entry of summary judgment in their favor on all five claims asserted in the Complaint [#2]. This

---

[1] This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c), on consent of the parties. *See* [#24, #26].

Motion [#50] was filed not only by Defendant David Lillie and Defendant Vivid Independent Publishing LLC, but also by former Defendant VegasNAP, LLC, doing business as Fiberhub, which was dismissed from this case after this Motion [#50] was filed. *Order* [#61] at 33. Thus, Defendants' Motion [#50] is moot to the extent asserted by now-former Defendant VegasNAP. This includes all argument pertaining to Claim Five, which was asserted only against Defendant VegasNAP.

In addition, the following other claims were dismissed after the parties filed their summary judgment motions: (1) Claim One, copyright infringement; (2) Claim Two, breach of contract, as to Defendant Lillie only; and (3) Claim Three, breach of the implied duty of good faith and fair dealing. *Order* [#61] at 33. Thus, only two claims remain to be adjudicated in connection with the present Motions [#50, #51]: (1) Claim Two, breach of contract, as to Defendant Vivid, and (2) Claim Four, unjust enrichment, as to both Defendant Vivid and Defendant Lillie. *Id.* The following recitation of facts therefore focuses on the facts underlying these two claims.

According to the undisputed summary judgment evidence,[2] Defendant Lillie is a Michigan resident who owns, in whole or in part, Defendant Vivid, which is a Michigan limited liability company. *See* [#58] at 14 (Facts #1, #2, #3). Defendant Vivid publishes art and graphic novels, which are primarily authored by Defendant Lillie, on the internet. *Id.* at 15 (Fact #5). Between 2008 and 2013, Plaintiff commissioned Defendant Lillie to

---

[2] Because each side filed its own motion for summary judgment, there are two separate charts providing the parties' statements of facts and supporting and/or opposition evidence. *See* [#57-1] (Plaintiff's chart); [#58] at 14-25 (Defendants' chart). For ease of reference, the Court cites the docket and page number of these statements as well as the number of each supporting fact.

draw multiple images of a character called QuickXyk.[3] *Id.* (Fact #6). QuickXyk is an anthropomorphic coyote who wears a black collar with a silver buckle. *See* [#57-1] at 1 (Fact #5).

On March 8, 2020, Plaintiff and Defendant Vivid signed and fully executed the Vivid Publication Contract 2.0. *See* [#58] at 16 (Fact #7). Defendant Lillie signed the contract on behalf of Defendant Vivid in his role as owner of the company. *Id.*; *see also* [#57-1] at 2 (Fact #7). The contract defines Defendant Vivid as the "Publisher," Plaintiff as the "Coauthor," and the proposed graphic novel titled "QuickXyk: Ring of Vengeance" as the "Work." *Vivid Publication Contract 2.0* [#51-2] at 1; *see also* [#57-1] at 1 (Facts #3, #4) (stating that QuickXyk: Ring of Vengeance is a graphic novel featuring QuickXyk).

The contract included the following "Ownership" provision: "The coauthor has allowed the use of their character in the formation of The Work, the specific chapters and passages comprising the novella and illustrations for Ring of Vengeance, and the coauthor shares ownership of The Work with the author and illustrator David Lillie." *See* [#58] at 20 (Fact #14); *see also Contract* [#51-2] at 1. The contract further provides: "The Publisher does not have ownership over the character, but is granted full license from the coauthor to print, promote, market, feature, and publish the Work featuring this character, in perpetuity." *See* [#58] at 21 (Fact #15); *see also Contract* [#51-2] at 1. There is no language in the contract giving Plaintiff the right to control the price of the graphic novel, i.e., the Work. *See* [#58] at 22 (Fact #16).

On February 28, 2023, approximately three years after the contract was signed, Plaintiff sent an email to Defendant Lillie and his spouse Elizabeth Lillie, implicitly

---

[3] The parties' recitation of this fact specifically uses the term "Xyk," which appears to be interchangeably used as an abbreviation of "QuickXyk."

attempting to invoke the "Dissolution" provision of the contract. *See* [#58] at 17 (Fact #9). This part of the contract provides: "Subsequent to any dissolution, the coauthor is understood to retain full ownership of their character QuickXyk, and The Publisher is understood to retain full licensing rights to continue publishing The Work." *Id.* at 21-22 (Fact #15); *see also Contract* [#51-2] at 3. The dissolution clause also states: "Either party may dissolve their involvement at-will, with no reason required, pursuant to the below conditions." *Contract* [#51-2] at 3. Those conditions concern notice, arbitration, inventory, and subsequent printing.[4] *Id.* at 4.

In part, Plaintiff wrote in the February 28 email:

So, . . . I would like to see a discontinuation of efforts toward publishing *Ring of Vengeance* – at least in its current form.
. . .
I do recognize this was a big passion project for us, and you put substantial time and effort into it -- often for free. You still deserve to benefit from that investment. So, if you wish to press ahead, I'd like to work with you in removing myself and Xyk from the work -- likely by replacing him with some other critter. In return, I'll surrender any claim to the work's profits, and I'll also refrain from posting any of the artwork or story henceforth. If you'd like to go this route, or if you have another strategy to suggest, just give the word, and I'm sure we can work out the details together.

Please let me know if I can answer any questions or offer any further clarity on this, and I hope we can otherwise discuss our next steps.

*See* [#51-1] at 1-2. Since the date of this email, Defendant Lillie has never personally contacted Plaintiff. *See* [#57-1] at 3 (Fact #9).

---

[4] Neither party has formally invoked the contract's arbitration clause and, at this late stage of the proceeding, were either party to attempt to do so, it is likely that the right would be deemed waived. *See Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772-73 (10th Cir. 2010) (discussing considerations a court must make when determining whether a contractual arbitration provision has been waived).

The next day, March 1, 2023, Plaintiff received an email from VividPublishing at Vivid@vividpub.com which was signed by someone simply as "-h". *See* [#58] at 17 (Fact #10), 24 (Fact #23); *see also* [#51-3] at 1. The message began:

> We are sorry to hear that you no longer wish for Quickxyk to be published by Vivid Independent Publishing.
>
> We regret to inform you that, as so much labor has been poured into this production, and as we've already announced its release to our fans, that Vivid Publishing will still be publishing Quickxyk under the original terms of the attached agreement.

*See* [#51-3] at 1. The email then referred to the "Publisher rights" provision of the contract, which provides:

> The coauthor grants the Publisher license to print, distribute, and promote the Work. This includes the Publisher entering into contractual agreements with 3rd parties who provide services related to printing, marketing, distribution, retail, delivery, et cetera.
>
> The coauthor grants the Publisher the right to use the Work and any related images for promotional and other purposes, as well as biographical information, as provided by the coauthor, for the purposes of publicity.

*Contract* [#51-2] at 1-2; *see also* [#58] at 21 (Fact #15). The email then continued:

> As a long-time fan of Dave and Liz, and Vivid Publishing, we hope you understand that once something is announced, it is not in the best interest of ourselves or our readers to then cancel that product or service.
>
> And as a favor to you for your long-time support, we will be Publishing Quickxyz, free to read, for our readers old and new.
>
> We understand this might not be the outcome you were hoping for, and we sincerely apologize for that.

*See* [#51-3] at 1.

On March 5, 2023, Plaintiff responded, writing to Defendant Lillie and Elizabeth Lillie. *See* [#58] at 17 (Fact #10). He stated:

> I don't know who "h" is. Are they speaking for you in this matter?

> Xyk is my personal character, whom I have built over nearly two decades. He is special, unique, and important to me. In recognition of his significant value, I have offered to work with you in disassociating Xyk from *Ring of Vengeance*. My offer was genuine, and it was made before you announced the project in the *Dreamkeepers Newsletter* issue entitled "Lackadaisy Featurette & Gregori Unleashed", released on the evening of February 28, 2023.
>
> **I do not permit the association of myself or my character, Xyk, a.k.a. QuickXyk, with any works published by Vivid Independent Publishing LLC.** Xyk is my intellectual property. In good faith, I am approaching you with plain terms, presented below, that will satisfactorily disassociate myself and my property from *Ring of Vengenance* [sic] and Vivid Publishing.

*See* [#51-4] at 1-2 (emphasis in original). Plaintiff then provided a list of seven proposed changes to the manuscript and illustrations of the Work. *Id.* at 2.

Less than 90 minutes after Plaintiff sent his email, he received a reply which was again signed by "-h". *Id.* at 1; *see also* [#58] at 18 (Fact #11). This email stated:

> I am "h", and I do speak for Dave, Liz, and all of Vivid's administrative team on this matter, as our decision is a unanimous consensus.
>
> We can remove your name, "Eric Harms", from the book, in all places it appears, if you truly wish.
>
> Your other requests require edits that we do not currently have the time or focus to perform, and there is nothing in the original agreement that you signed that legally compels us to perform them. As such we will not be performing these requested edits, and will not be discussing them, or any other edits, further.
>
> Again, we realize this is likely not the response you wanted to hear, but we have been granted the rights, by you, to publish this work, and our decision in this matter is final.

*See* [#51-4] at 1; *see also* [#58] at 24-25 (Facts #24, #25).

On March 8, 2023, Defendant Vivid released a newsletter announcing a "new free book" titled "QuickXyk: Ring of Vengeance." *See* [#58] at 19 (Fact #12). The graphic novel was posted online and given away for free. *See* [#57-1] at 3 (Fact #12). Plaintiff also

received free access to the final work once it was published. *See* [#58] at 23 (Fact #19). This lawsuit was subsequently filed on October 10, 2023. *See Compl.* [#2].

## II.  Standard of Review

The purpose of a Rule 56 motion for summary judgment is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

In determining whether summary judgment is appropriate, a court resolves factual disputes and draws reasonable inferences in favor of the nonmovant. *Chase Mfg., Inc. v. Johns Manville Corp.*, 79 F.4th 1185, 1195 (10th Cir. 2023). However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks and citation omitted) (emphasis in original). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party, and a fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his

claim such that a reasonable jury could find in his favor. *Anderson*, 477 U.S. at 248, 256. When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

Only documents that meet the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> . . .
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

Where a court is presented with cross-motions for summary judgment, it "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *Dirty Boyz Sanitation Serv., Inc. v.*

*City of Rawlins, Wyo.*, 889 F.3d 1189, 1195 (10th Cir. 2018) (internal quotations and citations omitted). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (internal quotations and citation omitted).

### III. Analysis

#### A.    Choice of Law

Plaintiff explicitly asserts that Colorado law applies to the remaining claims. *Motion* [#51] at 2. Although Defendants do not explicitly say the same, they make no argument to the contrary and cite only Colorado law in their summary judgment briefs. *See also Defs.' Motion to Disqualify* [#46] at 2 (observing that Plaintiff's claims for breach of contract and unjust enrichment are asserted under Colorado law). The Court therefore analyzes the remaining claims under Colorado law.[5] *See Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that [a particular state] law applies, [the court] will proceed under the same assumption.").

#### B.    Claim Two: Breach of Contract Against Defendant Vivid

Under Colorado law, a breach of contract claim contains four elements: "(1) the existence of a contract, (2) the plaintiff's performance of the contract or justification for nonperformance, (3) the defendant's failure to perform the contract, and (4) the plaintiff's damages as a result of the defendant's failure to perform the contract." *Univ. of Denver v. Doe*, 547 P.3d 1129, 1139 (Colo. 2024).

---

[5] The Court notes that the parties' Vivid Publication Contract 2.0 [#51-2] does not contain a choice-of-law provision.

### 1.    Existence of a Contract

Under Colorado law, the first element of a breach of contract claim is whether a contract exists. *Univ. of Denver*, 547 P.3d at 1139. The parties agree that a contract, i.e., Vivid Publication Contract 2.0 [#51-2], existed between them. *See* [#58] at 16 (Fact #7); *Defs.' Motion* [#50] at 10 ("In 2020, Lillie through his company Vivid entered into a Publication Contract with Plaintiff[.]"); *Pl.'s Motion* [#51] at 11 ("The existence of the contract, and its signing and execution by both parties, is undisputed.").

However, Defendant Vivid argues that the contract had been terminated prior to any purported breach. *Motion* [#50] at 21-22. Plaintiff, on the other hand, asserts what appears to be an alternative argument that the contract was never valid (which, if true, could impact the viability of his unjust enrichment claim). *Motion* [#51] at 14-17. The Court addresses each argument in turn, beginning with Plaintiff's.

### a.    Validity of the Contract

Broadly, a "valid contract" is "[a] contract that is fully operative in accordance with the parties' intent." *Contract*, BLACK'S LAW DICTIONARY (12th ed. 2024). An "invalid contract" is "[a]n agreement that is either void or voidable." *Id.* A "void contract" is "[a] contract that is of no legal effect, so that there is really no contract in existence at all," generally because the contract is "technically defective, contrary to public policy, or illegal." *Id.* A "voidable contract" is "[a] contract that can be affirmed or rejected at the option of one of the parties[.]" *Id.*

Plaintiff's alternative argument that the parties' "contract was potentially never valid" is based on Defendant Lillie's response to Plaintiff's Interrogatory No. 34. *Motion* [#51] at 14-15. This interrogatory asked: "Prior to any parties signing the Contract and

prior to this case being filed, did you ever explain to the Plaintiff that you had the authority to set the price of the Work to nothing and therefore deny the Plaintiff any value whatsoever in exchange for the use of his character QuickXyk?" *Def. David Lillie's First Objections & Answers to Pl. Eric O. Harms' Supp. Interrogatories* [#51-9] at 9. Defendant Lillie responded: "It was not the duty or obligation of Defendant to explain to him the specifics of any proposed agreement between the two parties." *Id.*

Plaintiff asserts that the Court could reasonably infer from this response either that Defendant Lillie "never intended to create a binding contract and simply used the Contract to lure the Plaintiff into licensing QuickXyk" or that Defendant Lillie "intended to create a binding contract with intentionally foggy language so it could be interpreted differently from what was understood at the time of the signing." *Motion* [#51] at 15. Although Plaintiff does not explicitly say so, these arguments appear to go to a claim of fraudulent inducement to contract—a claim which has not been made here. Even if he had, such a claim would require him to point to "a knowing misrepresentation of a material fact" made by Defendant Lillie on behalf of Defendant Vivid. *See Clancy Sys. Int'l, Inc. v. Image Sensing Sys., Inc.*, No. 16-cv-01848-CMA-KMT, 2017 WL 3086624, at *4 (D. Colo. Jan. 30, 2017). Here, Plaintiff has pointed to no specific material fact underlying his legal theory. Rather, Plaintiff's argument impermissibly requires the fact-finder to cross the line from reasonable inference made from the evidence to sheer speculation, particularly in light of Plaintiff's signature on the contract attesting that he "read, *understood*, and agreed" to all conditions in the contract. *See Contract* [#51-2] (emphasis added). In other words, Plaintiff apparently did not believe the language to be "foggy," and there is no indication that Defendant Vivid, through Defendant Lillie, thought so either.

In short, the Court finds that there is no genuine issue of material fact regarding whether the contract was valid. Plaintiff has not provided evidence sufficient to show that the contract was "technically defective, contrary to public policy, or illegal," or that it could "be affirmed or rejected at the option of one of the parties[.]" *Contract*, BLACK'S LAW DICTIONARY (12th ed. 2024). Rather, the undisputed summary judgment evidence demonstrates that it was valid, as the parties have explicitly agreed, despite this alternative argument made by Plaintiff.

### b.   Termination of the Contract

Defendant Vivid does not provide any evidence demonstrating that the contract *never* existed. However, although not entirely clear, Defendant Vivid appears to argue that Plaintiff had terminated the contract on February 28, 2023, before any purported breach by Defendant Vivid occurred, and therefore that the contract was *no longer* in existence at the time of any such breach. *Motion* [#50] at 21-22. The parties dispute whether Plaintiff properly invoked the dissolution clause of their contract, but, even assuming that Plaintiff had properly done so, the contract remained in effect for sixty days following February 28, 2023, i.e., through April 29, 2023. Specifically, the contract provides: "If either party intends to conclude their working relationship with one another, they will first provide written notice 60 days in advance of the dissolution becoming effectual." *Contract* [#51-2] at 4. There are no provisions indicating that the entirety of the contract did not remain fully in force during that sixty-day period. In other words, no provision of the contract limits the contract's effects in any way during that period. Here, all relevant actions underlying the purported breach occurred within this sixty-day period. Thus, regardless of whether Plaintiff properly initiated dissolution under the terms of the

contract, the contract was still in effect, and therefore in existence, at the time of Defendant Vivid's publication of the work in early March.

Accordingly, the Court finds as a matter of law that there is no genuine issue of material fact as to the first element of Plaintiff's breach of contract claim. The Court finds that the contract was in existence at all materially relevant times.

**2.  Damages**

Before addressing the second and third elements, i.e., whether each party performed the contract, the Court briefly addresses the issue of damages.

Under Colorado law, the fourth element of a breach of contract claim is whether the plaintiff incurred damages as a result of the defendants' failure to perform the contract. *Univ. of Denver*, 547 P.3d at 1139. Defendant Vivid argues that it is entitled to summary judgment on the breach of contract claim because Plaintiff has no evidence of any damages. *Defs.' Motion* [#50] at 22; *Defs.' Response* [#56] at 15-16; *Defs.' Reply* [#58] at 9. However, under Colorado law, "[n]ominal damages are recoverable even if no actual damages resulted or can be proven." *City and County of Denver v. Bd. of Cnty. Comm'rs of Adams Cnty.*, 543 P.3d 371, 382 (Colo. 2024); *see also Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 818 (Colo. App. 2003) ("Proof of actual damages is not an essential element of a breach of contract claim. When a plaintiff establishes breach, but does not prove actual damages, the plaintiff is entitled to nominal damages.").

Thus, Defendant Vivid is not entitled to summary judgment because Plaintiff has not set forth evidence of actual damages in connection with his breach of contract claim. *See, e.g.*, *Harriman v. Smart*, No. 22-cv-01883-SKC, 2024 WL 3581700, at *8 (D. Colo.

July 30, 2024) ("Since, under Colorado law, proof of actual damages is not an essential element of a breach of contract claim because a breach gives rise to recovery of nominal damages, . . . [the] [p]laintiffs' alleged inability to prove actual damages provides no basis to grant summary judgment in [the] [d]efendant's favor on any alleged breach[.]").

### 3.    Performance/Breach of the Contract

Under Colorado law, the second element of a breach of contract claim is whether the plaintiff performed the contract or can justify his nonperformance. *Univ. of Denver*, 547 P.3d at 1139. The third element of this claim is whether the defendant failed to perform the contract. *Id.*

In Colorado, contract interpretation is a question of law. *See, e.g.*, *Fed. Deposit Ins. Corp. v. Fisher*, 292 P.3d 934, 937 (Colo. 2013). When interpreting a contract, courts primarily seek "to determine and give effect to the intent of the parties." *CapitalValue Advisors, LLC v. K2D, Inc.*, 321 P.3d 602, 605 (Colo. App. 2013). To determine parties' intent, courts examine the contract's language; "[w]ritten contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language." *Id.* (quoting *Ad Two, Inc. v. City and County of Denver*, 9 P.3d 373, 376 (Colo. 2000)).

"[C]ourts must *not* view clauses or phrases in isolation." *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1060 (D. Colo. 2013) (internal citation and quotation marks omitted) (emphasis in original). "When faced with conflicting provisions in a contract, a court should adopt, if possible, a reasonable interpretation of the contract that gives effect to all its provisions. When two clauses of a contract are in apparent conflict, the clause that gives effect to the primary purpose of the contract will

control." *White River Vill., LLP v. Fid. & Deposit Co. of Md.*, Nos. 08-cv-00248-REB-BNB, 08-cv-00359-REB-BNB, 2009 WL 792728, at *3 (D. Colo. Mar. 23, 2009) (internal citations and modification omitted).

"A contract is ambiguous where it is reasonably susceptible of more than one meaning"; however, the parties' mere disagreement "concerning the meaning of terms does not create an ambiguity." *Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 841 (Colo. App. 2008) (internal quotation marks and citation omitted). To determine "whether an ambiguity exists, the court may look to the meaning of words with 'reference to all contractual provisions and the nature of the transaction which forms the contract's subject matter.'" *Stroh Ranch Dev., LLC*, 935 F. Supp. 2d at 1060 (quoting *In re Marriage of Thomason*, 802 P.2d 1189 (Colo. App. 1990); *May v. United States*, 756 P.2d 362, 369 (Colo. 1988) (en banc)).

When a contract contains an ambiguous term, "the meaning of [the] term is generally an issue of fact that may be determined by extrinsic evidence pertinent to the transaction." *Stroh Ranch Dev., LLC*, 935 F. Supp. 2d at 1059-60 (discussing Colorado law regarding contract ambiguity). Generally, though, "[w]here the terms of a contract are ambiguous, they must be strictly construed against the party drafting the instrument." *Green Shoe Mfg. Co. v. Farber*, 712 P.2d 1014, 1016 (Colo. 1986).

"When determining whether an act or omission would constitute a material breach of a contract, courts consider the importance or seriousness of the breach and the likelihood that the complaining party has received or will receive substantial performance under the contract." *Stan Clauson Assocs., Inc. v. Coleman Bros. Constr., LLC*, 297 P.3d 1042, 1045 (Colo. App. 2013). "A party has substantially performed when the other party

has substantially received the expected benefit of the contract." *Id.* "Deviation from contract duties in trifling particulars that do not materially detract from the benefits the obligee would have derived from literal performance does not constitute a material breach." *Id.* A breach of contract occurs only when there has been a "[f]ailure to *substantially* perform." *Id.* (emphasis added).

With respect to the second element, Defendant Vivid appears to argue that Plaintiff failed to perform and/or breached the contract in five ways: (1) Plaintiff "initiated termination of the Publication Contract via email without first conferring via telephone or in-person about the differences," in violation of Section VII (Dissolution), the "Arbitration" subsection, first paragraph,[6] *Defs.' Motion* [#50] at 22-23; (2) Plaintiff "failed to arbitrate over publication of the Graphic Novel," in violation of Section VII (Dissolution), the "Arbitration" subsection, second paragraph,[7] *Defs.' Reply* [#58] at 9; (3) Plaintiff filed this lawsuit, in violation of Section II, second paragraph,[8] and Section III, third paragraph,[9] *Defs.' Response* [#56] at 11; (4) Plaintiff filed Digital Millennium Copyright Act takedown

---

[6] This paragraph provides: "If a disagreement arises between the Publisher and the coauthor, they agree to first consult with one another, in person or over the phone, to resolve differences reasonably and amicably." *Contract* [#51-2] at 4.

[7] This paragraph provides: "If the Publisher and coauthor cannot resolve their differences, they will submit to impartial 3rd-party arbitration on the matter." *Contract* [#51-2] at 4.

[8] This paragraph provides: "The Publisher makes no guarantees or promises of action or results relating to the Work. The Publisher intends to print, promote, and sell the work, but financial shortfalls, time limitations, and other considerations may prevent the Publisher from acting on these intentions. The coauthor may not take legal action against the Publisher for a lack of action, unwanted results, or misfortune." *Contract* [#51-2] at 1.

[9] Defendant Vivid explicitly cites Section IV of the contract here, but this appears to be a drafting error, as it then quotes from Section III of the contract. Section III, third paragraph, provides: "Pursuant to this agreement, the coauthor retains ownership of their character. The Publisher does not have ownership over the character, but is granted full license from the coauthor to print, promote, market, feature, and publish the Work featuring this character, in perpetuity." *Contract* [#51-2] at 1.

notices, in violation of Section II, second paragraph, and Section III, third paragraph, *id.*; and (5) Plaintiff filed a Copyright Claims Board matter, in violation of Section II, second paragraph, and Section III, third paragraph, *id.*

With respect to the third element, Plaintiff appears to argue that Defendant Vivid breached the contract in three ways: (1) by failing to honor Plaintiff's dissolution request under Section VII, paragraph 1,[10] *Pl.'s Motion* [#51] at 12; (2) by failing to consult "in person or over the phone" in violation of Section VII (Dissolution), the "Arbitration" subsection, first paragraph, *id.*; and (3) by releasing the Work for free, in violation of Section V (Sales and Revenue),[11] *id.* at 13; *Pl.'s Reply* [#57] at 9-10.

Regarding these two remaining elements of Plaintiff's breach of contract claim against Defendant Vivid, i.e., whether each party performed under the contract, the Court has considered the entirety of the parties' summary judgment briefing and the applicable law and finds that genuine issues of material fact preclude entry of summary judgment in favor of either party. These disputes include, *but are not limited to*: (1) whether one or both parties participated in the drafting of the contract (thereby affecting appropriate interpretation of the contract), *see* [#57-1] at 2 (Disputed Fact #6); (2) interpretation of ambiguous contract provisions, including provisions relating to sales and revenue, thereby making the consideration of extrinsic evidence appropriate; and (3) to what extent

---

[10] This paragraph provides: "The contract is entered into at-will by both the Publisher and the coauthor. Either party may dissolve their involvement at-will, with no reason required, pursuant to the below conditions. Subsequent to any dissolution, the coauthor is understood to retain full ownership of their character QuickXyk, and The Publisher is understood to retain full licensing rights to continue publishing The Work." *Contract* [#51-2] at 3.

[11] This section discusses "[r]evenue originating from the work" and is divided into several subsections, including "Book Sales," "Electronic Sales," "Merchandise Sales," "Licensing of Significant Rights," and "Marketing Costs." *Contract* [#51-2] at 2-3.

"-h" was authorized to speak and/or make decisions on behalf of Defendant Vivid. Thus, summary denial of the parties' cross-motions for summary judgment on the breach of contract claim is appropriate. *See, e.g., Noe v. United States*, No. 21-cv-03340-CMA-STV, 2025 WL 1397972, at *5 (D. Colo. May 14, 2025) (summarily denying a motion for summary judgment where the Court found material facts to be in dispute).

Accordingly, both Motions [#50, #51] are **denied in part**, to the extent they seek entry of summary judgment in their respective favor on Plaintiff's breach of contract claim.

## C.    Claim Four: Unjust Enrichment Against Defendants Vivid and Lillie

Under Colorado law, an unjust enrichment claim contains three elements: "(1) at plaintiff's expense (2) defendant[s] received a benefit (3) under circumstances that would make it unjust for defendant[s] to retain the benefit without paying." *DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998). However, in Colorado, "breach of contract and unjust enrichment claims involving the same subject matter are mutually exclusive." *Bd. of Governors of Colo. State Univ. v. Alderman*, 563 P.3d 1205, 1213 (Colo. 2025). In other words, "a party may not assert a claim for unjust enrichment if a valid contract covers the same subject matter." *Id.* "This is true even if the plaintiff is unable to recover under the contract." *Id.* Here, the Vivid Publication Contract 2.0 clearly covers the same subject matter as Plaintiff's unjust enrichment claim, i.e., the publication of the Work. *See generally Compl.* [#2] ¶¶ 21-36, 52-53, 56-57.

There are two exceptions to the rule that an unjust enrichment claim may not involve the same subject matter as a valid contract. *Alderman*, 563 P.3d at 1213. Plaintiff asserts that both apply. *Motion* [#51] at 17-18.

The first exception occurs when "the express contract fails or is rescinded[.]" *Alderman*, 563 P.3d at 1213. Plaintiff asserts that this exception is met because "the unjust enrichment occurred after the Defendant breached the contract, thus having the contract fail[.]" *Motion* [#51] at 17. The second exception occurs when "the claim covers matters that are outside of or arose after the contract." *Alderman*, 563 P.3d at 1213. Plaintiff asserts that this exception is met because "the unjust enrichment comes due to the Defendant's unapproved decision to release the Work for free, a decision outside of the reasonable terms of the Contract." *Motion* [#51] at 17-18.

Plaintiff does not provide additional argument or any legal authority demonstrating how these circumstances fit the exceptions to the rule. *Motion* [#51] at 17-18. These cursory arguments deserve only cursory analysis by the Court, as neither has any merit. Plaintiff's argument that "the unjust enrichment occurred after the Defendant breached the contract, thus having the contract fail," *id.* at 17, "would effectively obliterate the difference between breach of contract and unjust enrichment claims." *Alderman*, 563 P.3d at 1214. In other words, Plaintiff appears to argue that every time damages are incurred after a party breaches the contract, an unjust enrichment claim must be allowed to proceed because the contract has failed. *Motion* [#51] at 17. The entire point of a breach of contract claim is to attempt to obtain damages due to a purported breach. If Plaintiff's viewpoint were to prevail, every breach of contract would inherently become an unjust enrichment claim. That is not how the law works.

Regarding Plaintiff's assertion that the second exception is met because "the unjust enrichment comes due to the Defendant's unapproved decision to release the Work for free, a decision outside of the reasonable terms of the Contract," *Motion* [#51]

19

at 17-18, the Court finds that this issue is not a matter that is "outside of or arose after the contract." *Alderman*, 563 P.3d at 1213. In fact, this issue is at the very heart of the contract, which is concerned solely with the parties' obligations and agreements relating to publication of the Work. Defendants' decision *may* have breached the contract, but making such a decision was certainly not outside of the contract's purview.

In short, the Vivid Publication Contract 2.0 clearly covers the same subject matter as Plaintiff's unjust enrichment claim, i.e., the publication of the Work, and neither exception applies. Because the Court finds there is no genuine issue of material fact that an express contract governs the legal issues presented here, Defendants are entitled to entry of summary judgment in their favor as a matter of law.

Accordingly, Defendants' Motion [#50] is **granted in part** to the extent Defendants Lillie and Vivid seek entry of summary judgment in their favor on Plaintiff's unjust enrichment claim. Plaintiff's Motion [#51] is **denied** to the extent Plaintiff seeks summary judgment in his favor on this same claim.

## IV. Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that Plaintiff's Motion [#51] is **DENIED**.

IT IS FURTHER **ORDERED** that Defendants' Motion [#50] is **GRANTED in part and DENIED in part**. The Motion is **granted** to the extent that judgment shall enter in favor of Defendants Lillie and Vivid and against Plaintiff on Plaintiff's unjust enrichment claim. The Motion is otherwise **denied**.[12]

---

[12] Thus, the sole remaining claim in this lawsuit is Plaintiff's claim of breach of contract against Defendant Vivid.

Dated: June 26, 2025

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge